JOHN M. JAYCOX et al., Appellants, v. WILLIAM CALDWELL et al., Respondents.

Where a husband, married prior to the act of 1848 for the more effectual protection of the property of married women (chap. 200, Laws of 1848), declined to assert his marital rights to the personal property of his wife, but has borrowed money from her with the understanding and agreement that it shall be repaid; the agreement is for a good consideration, and imposes an equitable obligation upon the husband; and a preference of the debt in good faith and without an intent to defraud, in an assignment for the benefit of creditors, is legal and does not vitiate the assignment.

There is no distinction between cases where the property, at the time of marriage, consisted of money in the possession of the wife, and those where it consisted of choses in action.

(Argued September 25, 1872; decided January term, 1873.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial district, affirming a judgment in favor of defendants, entered on the report of a referee. (Reported below, 37 How. Pr., 240.)

The action was brought to set aside an assignment, made by the defendant William Caldwell, to assignees for the benefit of his creditors as fraudulent, on the ground of a preference given to his wife for a debt alleged to be due from him to her for money borrowed.

The facts sufficiently appear in the opinion.

*Mr. Hunt* for the appellants. At the time of the marriage, the wife's property became absolutely vested in the husband, and he could not consummate a promise to repay it to her, after he had become insolvent, as against his creditors. (Kent's Com., 7th ed., 125; 2 Kern., 202; 42 Barb., 374; 2 id., 352; 33 id., 264; 24 N. Y., 372; 22 id., 110; 9 Paige, 363; 4 J. Ch., 64; 3 Cow., 590.) The wife had no equities to support the promise. (Kent's Com., 7th ed., 120 *et seq.*; *Udall* v. *Kenney*, 3 Cow., 590.)

*E. G. Lapham* for the respondents. The conclusion of the referee is correct. (*Woodworth* v. *Sweet*, 44 Barb., 268; *McCartney* v. *Welch*, id., 271; *Babcock* v. *Eckler*, 24 N. Y., 623.) A contract between husband and wife, by which property is set apart for her separate use, though void at law, will be sustained in equity, where no creditors of the husband are affected. (*Garlick* v. *Strong*, 3 Paige, 440, 452; *Partridge* v. *Havens*, 10 id., 618; *Wickes* v. *Clark*, 8 id., 161; *Schaffner* v. *Rutter*, 37 Barb., 44; *Phillips* v. *Wooster*, 36 N. Y., 412; *Kelly* v. *Kelly*, 1 Keyes, 29.) The exceptions raised upon the trial were waived by not being argued at the General Term. (3 Bosw., 560, 578; 4 Keyes, 180, 195.)

LOTT, Ch. C. It appears, by the report and additional findings of the referee who tried the issues, that the defendants Caldwell and wife were married in the year 1841; that at the time of making the assignment in question the defendant William Caldwell was insolvent, and was then actually and justly indebted to his wife in the sum of $700 for moneys borrowed by him of her within the three years next preceding its date (being the fourth day of February, 1867); and he finds further that the said assignment was made and preference was given thereby by him to his wife for such indebtedness in good faith, and without the intent to hinder, delay or defraud his creditors.

It was also found that the judgments, under which the plaintiffs, as creditors of Caldwell, seek to set aside the assign-

ment, were recovered after the execution of the assignment; but that the debts on which the recoveries were had accrued previously thereto. It further appears by such additional findings that the wife of Caldwell, at the time of her marriage, had $1,100 in moneys belonging to her; that he, from time to time thereafter, up to the execution of the assignment, obtained from and returned to her different sums of money; that a portion of the indebtedness found due to her, and preferred in the assignment, consisted of two sums (one of $65 and the other of $600), received by him of her (the first in 1841 and the other in 1842); and that, excluding these items, there was no consideration for the amount for which such preference was given. The referee also found that the intention of the defendant William Caldwell, in preferring his wife in the said assignment for the sum of $700, was "that she might be paid that sum by reason of her having let him have the moneys, or the avails thereof, which she had at the time of their marriage."

The transactions between the husband and wife in relation to those moneys, the receipt and payments of the different sums from time to time, and the course of dealing between them, are detailed with considerable particularity by the referee; and they warranted him in the conclusion that the husband never asserted or intended to assert his marital rights to the fund, but that the moneys were received by him with the understanding and promise that they would be repaid to her as and for her own property and separate estate. That is not so found by him in express terms (except as to the sum of $600, the avails of a note of the firm of Hannah & Hannon, previously received by her from him, which was included in the sum of $700, stated in the said report to have been borrowed within the three years preceding the date of the assignment); but it is stated in his findings that the plaintiffs' counsel asked him "to find that the promise by the said husband to the said wife to repay to her the moneys received by him from her out of the $1,100 which she had at the time of the marriage, was not a consideration to support the transfer

to her of the Hannah & Hannon note, nor for the preference
to her in the assignment of $700 after he had become insol-
vent, as against the claims of his creditors." This request
assumes or is based on the fact that such promise was made.
The case must, therefore, be reviewed, and the appellants'
points are indeed based on that assumption or construction
of the findings; and I may add, in this connection, that a
reference to the testimony shows that proof of an agreement
to make such repayment was given, and was the ground of
an exception hereafter considered; and also that the parties
kept separate accounts of moneys since they were married;
and that they "settled up with each other" when he bor-
rowed the $600—the avails of the Hannah & Hannon note.

Thus construing and considering the findings, the referee
was authorized and justified, within the decisions of the Court
of Appeals, in *Babcock* v. *Eckler* (24 N. Y., 623), and by
this commission, in *Savage* v. *O'Neil* (44 id., 298, decided
adversely to my individual dissenting opinion), and subse-
quently in the May term, 1872, affirming the decisions of the
Supreme Court at General Term in *Woodworth* v. *Sweet*
(*ante*, p. 8), and *McCartney* v. *Welch* (*post*, p.     ), in hold-
ing and deciding that the preference given by Caldwell, the
husband, to his wife was legal; and it also having been found
that the assignment was made and that such preference was
given in good faith, and without the intent to hinder, delay
or defraud the creditors of the husband, he also properly
decided, as a conclusion of law, that the defendants were enti-
tled to judgment for the dismissal of the complaint.

There is no ground for a distinction, as claimed by the
appellants' counsel, between cases where, at the time of mar-
riage, the property is money in the possession of the wife,
or where it consists of choses in action. At common law all
the personal property of the wife vests absolutely in the hus-
band at the moment of marriage, and all she acquires during
coverture immediately becomes his. This is equally true in
respect to her choses in action, as any other species of her
personal estate; and when they are reduced into the hus-

band's possession, there is no greater equitable consideration for a voluntary appropriation of the proceeds to the use of his wife, or his promise to do so, subsequently, than of any other personal property owned or acquired by her of which he has possession. This case is, therefore, not distinguishable in principle from those to which I have referred in support of the referee's decision.

It is however claimed that a portion of the evidence, upon which the referee's findings of fact were founded, was improperly admitted. It is, therefore, necessary to examine whether there is any valid ground for this claim. Caldwell, the husband, who was called and examined as a witness on the part of the plaintiffs, testified on such examination in reference to the indebtedness on which the judgments were recovered, and in relation to the money transactions between him and his wife from the time of their intermarriage to the execution of this assignment; and he testified that he gave her no note or obligation signed by himself for any money he had received from her, and also that the two sums of $65 and $600 above referred to formed a part of the preferred debt to her. He then, on his cross-examination, after stating the time of such intermarriage and that he was then not worth any property, said that the first money he got of his wife was $65, and that he was to repay it with interest. The proof of the agreement to make such repayment was objected to by the plaintiffs' counsel " on the ground that the money belonging to the husband, there was no consideration therefor," but it was admitted against the plaintiffs' exception. He then, after some testimony was given in relation to matters that had been inquired of by the plaintiffs, and after stating that he went into business in 1866 with Hannah & Hannon, was asked this question: " Were you, at the time you went into business with Hannah & Hannon, indebted to your wife for money lent?" This was objected to by the plaintiffs' counsel " as too general and as asking for a conclusion of law, and witness must state facts." The case then states that the referee overruled the objection and witness answered: " I did

owe her borrowed money at that time," and the plaintiffs' counsel duly excepted. Neither of those exceptions were well taken.

It was competent for the defendants to show the circumstances under which the husband received from his wife the money which he had been asked about, on his direct examination, for the purpose of proving that he did not take it from her in the exercise of his marital rights as his own property, but with the recognition of her continued right thereto, and on an understanding and agreement which would give her such a claim in equity as would justify the husband in securing it to her, and the evidence first referred to tended to show that fact; and the last question, in the connection in which it was asked, could only be properly understood as asking whether any of the moneys that had been thus received by him remained unpaid. The answer was only responsive to the question, and showed that the money he had borrowed of her was still due ; it established a fact.

If, however, it did call for a conclusion of law, the answer was harmless. It did not state any amount of indebtedness; and all the facts and circumstances attendant on the receipt of the moneys were before the referee, and his conclusion of law must be assumed to be based on them, and not any general expression of legal opinion by the witness on the question of indebtedness, without any specification of the amount. If these facts and circumstances did not warrant the conclusion of law so reached by him it cannot stand, and the plaintiffs are not prejudiced.

The exceptions, therefore, are not available in any aspect of the case as a ground for the reversal of the judgment.

It follows, from what has been said, that the judgment must be affirmed with costs.

All concur.

Judgment affirmed.