CANAL BOAT (LOWRY v.). See Case No. 8,580.

CANAL BOAT NO. 68 (UNITED STATES v.). See Case No. 16,027.

CANAL NAT. BANK (EMERY v.). See Case No. 4,446.

---

## Case No. 2,378.

### CANBY v. McLEAR.

[13 N. B. R. (1876) 22.] [1]

### District Court, D. Delaware.

CONSTRUCTION OF WILL — LEGACY TO MARRIED WOMAN—HUSBAND'S REDUCTION TO POSSESSION — PROMISE OF REPAYMENT — MOTION TO EXPUNGE PROOF—RIGHTS OF MOVING PARTY.

1. A residuary bequest directing certain real estate to be sold to the best advantage, and continuing as follows:—"and all the remainder of my estate, real, personal, or mixed, and the proceeds thereof, * * * I do give and bequeath to my daughters," etc., held to entitle one of the residuary legatees, a married woman, only to money, the proceeds of sale, and not to a share of the stocks (which constituted a portion of the residue), disencumbered, by force of the married woman's act of 1865, from the marital rights of the husband.

2. A legacy to a wife of a share of the residue of her father's estate, including the proceeds both of land and stocks, directed to be sold, does not constitute a separate estate in the wife, under the Delaware statute of 1865; and such legacy having been reduced to possession by the husband, a note and check afterwards given by him to his wife for the proceeds thereof, are nullities, and cannot be proved by the wife against the estate of her husband in bankruptcy.

[See Chappelle v. Olney, Case No. 2,613; Gallego v. Chevalle, Id. 5,200; Wickham v. Valle, Id. 17,613.]

3. Such note and check do not constitute a trust or gift in favor of the wife, nor are they sufficient evidence to support a trust, though the note bears an indorsement (assumed to be made by the husband) to the effect that the note was given for money accruing to the claimant from her father's estate.

4. Quere. Whether the doctrine of the wife's equity extends so far as to enable her to restrain her husband from proceeding at law to collect her chose in action, until he makes a provision for her?

5. The right of a wife to have interposed by bill in equity to prevent her husband from reducing to possession her chose in action by proceedings at law—even conceding such right to be established by the authorities—held insufficient to support a promise by the husband, to pay to the wife a sum equal to the proceeds arising from the sale of the wife's legacy, where the promise was made subsequently to its reduction to possession by the husband.

6. The doctrine of the wife's equity to a settlement, has no application to a case where the husband has reduced to possession a legacy to the wife, without legal process, and with her assent.

[See Shaw v. Mitchell, Case No. 12,722; In re Campbell, Id. 2,348; Ward v. Amory, Id. 17,146.]

7. In such case, there is no consideration to support a promise subsequently made. to pay to a wife a sum of money equal to the amount received from the legacy.

8. On the hearing of a motion to expunge a proof, the moving party is entitled to open and close.

9. If the testimony of the bankrupt is desired on a motion to expunge a proof, he should be summoned as a witness.

10. The answer to a petition to expunge a proof cannot be used as evidence.

11. The papers annexed to an answer to a petition to expunge a proof, can only be used as evidence by being proved in the usual manner.

In bankruptcy. Petition [by William Canby, assignee in bankruptcy of John P. McLear & Son] to expunge proof of claim [of Amelia F. McLear].

Several questions of practice were raised and decided at the hearing, viz.: First. The court held that as the proof stood as a prima facie claim on which a dividend would be paid, unless some proceeding was taken to impeach it either in law or fact, the burden of showing that it was not a proper claim rested upon the assignee, and entitled him to the opening and reply. Second. Upon affidavit of the claimant filed, application was made by her counsel for an order for the examination of John P. McLear, one of the bankrupts, and husband of the claimant, under section 5086, United States Revised Statutes. The record disclosed the fact that no subpoena had been issued for him. The court denied the motion, and remarked, that if an examination of John P. McLear were desired with respect to the present hearing, he should be summoned as a witness. John P. McLear was then offered as a witness, but objection being made to his competency, he was withdrawn without a decision being had upon the objection. Third. Claimant had annexed as exhibits to her answer to the petition, certain papers which were sought to be treated in the argument, supported by her affidavit to the answer of her counsel as proofs. Upon objection made, the court ruled, that neither the answer nor any papers annexed to it could have any effect as evidence; that the answer was a voluntary affidavit, operating only as a plea traversing the allegations of the petition, and could not be used as evidence for the claimant, though she bound herself by any admissions of fact contained in it; and that the papers annexed to it could only be made evidence by being proved in the usual manner, subject to the right of cross-examination.

George H. Bates and Edward G. Bradford, Jr., for assignee.

Benj. Nields, for claimant.

BRADFORD, District Judge. Amelia F. McLear, the claimant, is the wife of John P. McLear, one of the bankrupts, and is and was at the time of making proof of her claim, the mother by him of three children, now living. Her claim is based, 1st, upon a certain promissory note, which reads as follows: "$2,955.54. Wilmington, Del., Janua-

---

[1] [Reprinted by permission.]

ry 1st. 1867. Six months after date I promise to pay to the order of Amelia F. McLear, at the First National Bank of Wilmington, twenty-nine hundred and fifty-five dollars and fifty-four cents, without defalcation, for value received. John P. McLear,"— and, 2d, upon a check for nine hundred and eight dollars and four cents, drawn by John P. McLear in favor of the claimant, January 1st, 1867: which check it is alleged was lost or mislaid, and could not be produced at the time of the proof of her claim. The two sums above-mentioned, with legal interest, constitute the amount of the claim filed.

Thomas C. Alrich, the father of the claimant, died in June —, 1865, leaving a last will and testament, by which he made provision for his wife and children. The clause in the will which bears upon the question presented is as follows: "And as my dwelling-house and lot would amount to more than I could give to any one of my children, I direct my executors to sell and dispose of them to the best advantage, and all the remainder of my estate, real, personal, or mixed, and the proceeds thereof, including the amount of the mortgage and bank stocks reserved for my wife, I do give and bequeath to my daughters, Elizabeth D. Porter, Susanna C. Bush, Adaline G. Besson, Harriet S. Clark, Amelia F. McLear, and my son William A. Alrich, or their heirs or assigns, to be equally divided among them, share and share alike. * * * I do hereby nominate. constitute, and appoint my two sons-in-law, William Bush and John P. McLear, the executors of this my testament and last will." The will was duly proved, and William Bush and John P. McLear were duly qualified as the executors thereof. The estate of the deceased embraced, among other property, sundry stocks, which were not sold by the executors, but were divided among the parties entitled to receive the same. The bequest to Amelia F. McLear was not a specific legacy, nor was it a demonstrative legacy, to be paid out of a specific fund pointed out for that particular purpose; but it was a general pecuniary legacy to be paid by the executors, who were directed to sell real estate and personal estate, including the stocks. etc., to raise the moneys thus to be distributed according to the terms of the will. There was no trust raised by the will in favor of the claimant, nor was any separate estate given to her by the will, in opposition to the marital rights of her husband.

The law of the state of Delaware at that time created no such separate estate; for this bequest did not come within the provisions of the act of 1865. That act provides, "That the real estate, mortgages, stocks, and silver-plate belonging to any unmarried woman at the time of her marriage, or to which she may become entitled at any time during her coverture. shall remain and continue to be her sole and separate property, and shall

not be subject to the disposition of her husband, etc." It was claimed by the counsel for the claimant, that she was entitled, under the will, substantially to a share of these stocks ordered to be sold; that they constituted the substance of value which was intended by the testator to be given, and by a fair and liberal construction, should be considered as that which was given; and that consequently the claimant, under the laws of Delaware, was entitled to shares of stock, or the proceeds of their sale, disencumbered from any marital rights on the part of her husband. The court cannot take this view of the case. Money was here the precise subject-matter of the bequest, and the construction of the statute even in doubtful cases must lean to the support of the common law rights of the husband. Although the will of Thomas C. Alrich directed these stocks to be sold by the executors, and the proceeds thereof to be divided among the various legatees therein named, no sale was made by the executors, but by consent of the parties interested, the stocks were divided in kind among the parties entitled to receive the same; John P. McLear having had transferred to himself in his individual name on the books of the respective companies the shares which his wife would have taken, had he not asserted his marital rights to take them into his own possession. He also received into his possession, as his wife's share of the cash in the hands of the executors for distribution, the sum of nine hundred and eight dollars and four cents. Amelia F. McLear could not have validly claimed these stocks, for they were not bequeathed to her, or in trust for her; nor was there any act or consent needed from her to invest her husband with full power to take possession of the stocks, for, they having been substituted for money by consent of all the parties capable of giving consent, he was the proper person to take possession of them. John P. McLear subsequently sold the stocks which he had received on account of his wife's legacy, for the sum of two thousand nine hundred and fifty-five dollars and fifty-four cents. Thus, having not only become possessed of these stocks, but also having converted them into money, and having received the above-mentioned sum of nine hundred and eight dollars and four cents, John P. McLear reduced the legacy, or chose in action of his wife, into his absolute possession and control. And this is not all; for he completely converted it to his own use by reason of his putting most of this money into his own business operations as a banker, and the rest into a dwelling-house purchased in his own name, and for his own use and benefit. There can therefore be no dispute as to the fact of conversion to the husband's use. It is true that mere possession is not conclusive evidence of conversion by the husband; but in this case, so far as we have considered it up to this point, there

was a complete appropriation to his own use and benefit, without the slightest intimation so far of any intention that his wife should have a separate interest in the moneys, or the stocks, or the fund produced by them.

On the 1st of January, 1867, some nine months, on an average, after the moneys arising from the sale of the stocks which had been transferred to John P. McLear, were received by him, and a considerably longer period after the above-mentioned sum of nine hundred and eight dollars and four cents had been received by him, the note and check in question were given. Assuming now, for the purposes of argument, that the words written upon the back of the envelope annexed to the answer of the claimant were in the handwriting of John P. McLear, and related to the shares of stock which he had received, and to the check for the nine hundred and eight dollars and four cents also received by him; and assuming further the genuineness of the handwriting on the back of the promissory note for two thousand nine hundred and fifty-five dollars and fifty-four cents, and waiving any objections which might justly be made to the deficiency of proof of the loss of the check, and that proper and diligent search had been made therefor, what are the equitable rights of Amelia F. McLear in the premises, in the enforcement of which a court of equity should assist her, growing out of the execution and her possession of the note and check? The writing on the envelope contains these words, "Certificates of stocks belonging to Amelia F. McLear" and "J. P. McLear's check for nine hundred and eight dollars and four cents," and also other words pointing to the time when, and the persons to whom John P. McLear sold some of the stock. The writing on the back of the promissory note is as follows: "This note is for money accruing to my wife from her father's estate. It has been invested by me in my business, except nine hundred and eight dollars and four cents which I put into my dwelling, No. 709 French street." Are these expressions and words, together with the other facts in the case, sufficient to entitle Amelia F. McLear to the claim she has made? The fact is beyond question, that a complete conversion of the stocks and moneys, both in point of fact and in point of title, had been made. The written statement on the back of the note above-mentioned is conclusive upon this point. All the declarations of John P. McLear in writing upon the envelope and the note, cannot alter or in any way affect the established fact that, long before this note was given, or the writing made upon the envelope, John P. McLear had converted to his own use the moneys arising from the property which represented the share of Amelia F. McLear in her father's estate. It may be, and we think, from the fact that John P. McLear several times spoke of the stocks and moneys as belonging to his wife, it is probably true, that he intended to make, and believed he was making some kind of provision for his wife, at least that he thought he was entering into a contract, which he hoped to have executed at some future time.

Of what value to Amelia F. McLear were this note and check? Amelia F. McLear was a legatee of her father, Thomas C. Alrich. Had John P. McLear been under the necessity of applying to a court of equity for assistance in obtaining this legacy, the court would not have granted it without his making a suitable settlement on his wife;—and even admitting the correctness of the law contended for by the claimant's counsel, that a court of equity would go so far as, upon the wife's application, to restrain the husband from proceeding in a court of law for the recovery of his wife's legacy, until he should make a suitable provision for her;—John P. McLear has not brought himself within either of these cases. He obtained the legacy without legal process and converted it to his own private use, and as it appears, with the consent of his wife. The real question is, will such a contract by a husband with his wife, made long after the legacy has been not only reduced to possession, but converted to the use of the husband, be valid? Every executory contract must be based on a consideration—no matter whether this contract be made between married persons or not—and the main question here to be decided is, was there any consideration for the note at the time it was given? There was none; for she had no separate estate to give to her husband as a consideration for the note; it was all gone, used, diverted into new channels. He required no aid at her hands to enable him to enjoy to the full his marital rights with respect to this legacy. None of the circumstances (which control many of the cases cited) of aid by the wife, necessary to the successful prosecution of her rights by the husband, occur in this case. And the claimant is driven to this position, that, as she had a right, if she had seen fit to exercise it, to have restrained her husband by a bill in equity, from proceeding at law to recover the legacy, had it been necessary for him to do so, this option to refuse her assent to his recovering this legacy, had it been necessary for him to go into a court of law for that purpose, constituted in itself a valid consideration for the note given by John P. McLear to his wife. Many and conflicting cases were cited, to show what is the law in this country as to the power of the wife to restrain her husband, by bill in equity, from proceeding at law to recover a legacy, or chose in action bequeathed her. An extended examination of authorities on this point would involve too much time and labor, since it is unnecessary to the decision of this case. It must be conceded, however, that

New York authorities and others in this country assert this right in favor of the wife—and if this question were presented, this court would have to decide between the more modern cases, enlarging the sphere of the rights of married women, and those which stand by the ancient landmarks, and rest upon the antiquated idea that separate and conflicting interests in one household do not conduce to domestic harmony and unity. This question, however, need not be examined, for we have already said that no such case was presented to this court—and the probability that Amelia F. McLear might have enjoined her husband, had it been necessary for him to sue for the legacy in a court of law, cannot create a consideration for this note and this check. No court has gone to such a length. Such a decision would overthrow all the settled law on the subject of enforcing voluntary executory contracts in a court of equity. The nearest case to this presented is that of Estate of Hinds, 5 Whart. 138, in which Chief Justice Gibson held, that a certificate of a husband, that he had borrowed money of his wife and promised to pay the interest to her annually, furnished sufficient evidence that he held the money as trustee for the wife, and not in his own right. It will be observed that case differed from this in two particulars—1st, the question was between the wife and the representatives of the husband: and, 2d, he received from his wife the money which was in her own possession, so that he had not as yet reduced it to his own possession. Had the case there been between the creditors and the wife, and had Hinds had the money in his possession, and used and invested it before making this certificate of loan and promise to pay interest thereon to his wife, it would then have been in point. This is a strong case to show what will amount to a declaration of trust—and it could have been decided on no other principle than that there had not been a conversion of the chose in action, and that this act was evidence that he did not intend to convert it; and his promise to pay interest on the sum loaned, was to be fairly construed as a declaration of trust. Indeed, the chief justice says in this very case, that the certificate of loan and promise to pay was worthless as a promise from a man to his wife.

In Tritt's Adm'r v. Colwell's Adm'r, 31 Pa. St. 228, Judge Strong, now of the supreme court and presiding judge in this circuit, who gave the opinion of the court, on page 234 says: "An actual use of the wife's chose in action for his own purposes works a transfer of her ownership"—a terse and admirable statement of the law as applicable to this case. In Woodworth v. Sweet, 51 N. Y. 8, the same principle is laid down by Judge Leonard, in the commission of appeals. This also was a case of retention by the wife of the separate estate, and borrowing by the husband. And he says a "promise to repay money so borrowed by the husband cannot be regarded as nudum pactum. The equity to have a settlement made on her constitutes the valuable consideration for the note." Now, in this case before the court, there was and could be no equity for a settlement to Amelia F. McLear when the note and check were given, for, in the language of Justice Strong, "there had been an actual use of the wife's chose in action for his own purposes" by John P. McLear, so that the equitable right was destroyed, and could not be the basis of any consideration for the note and check.

The case of Jaycox v. Caldwell, 51 N. Y. 395, is a like case, in which the promise to pay is based on the consideration of the wife having loaned to the husband her own estate in her own possession. The case of Riley v. Riley, 25 Conn. 154, is not in point; the notes given were in consideration of money borrowed by husband before marriage, and the husband said if she would not proceed to collect them against him, they would be good against his estate, and he directed her to keep the notes. The court held that this was in the nature of an ante-nuptial settlement. I can find no case where there has been an absolute conversion of the property, in which a promise to pay back money obtained from the separate estate of the wife is considered valid. If there is such a case, it is in the teeth of all the well-settled principles of equity governing such cases. There is, however, one case, Turner v. Nye, 89 Mass. [7 Allen] 176, which is in many points identical with this before the court. A note was given by the husband to the wife for the proceeds of sales of lands coming by descent to the wife; and another note for moneys received from trespass on lands of wife, and these notes were delivered to the wife; the husband made memoranda on notes, showing from what source the money was received, and that the money was used to build his dwelling-house, and at the time of delivery made the declaration that they belonged to her, and afterwards, when giving her money, paid it as interest money—yet the supreme court of Massachusetts would not hold his estate liable in equity for the payment of these notes after the husband's death. The court would not consider these notes as declarations of trust, and bases the decision on the special ground that there had been a complete conversion by the husband before the notes were given. This case is direct authority on the point, that this note and check could not be upheld as a gift; it could not be the subject-matter of a gift, even if a perfect delivery and separate possession had been proven; and it is also direct authority on the point, that as a note or contract as between man and wife it is utterly void.

It will be observed that in Turner v. Nye, "at or about the time of receiving the mon-

ey" by the husband with the consent of the wife, the notes were given, so that the case is not so strong as the one before the court, where the conversion was nine months old before the existence of the note or check. The court regrets that the law will not permit the payment of this claim; as doubtless it was the bona fide intention of John P. McLear that his wife should be secured at some future day in this amount. Had he registered these stocks in the name of his wife; had he placed the money in the hands of a third party for her use; had he given her exclusive possession of the note or bond of a third person; had he allowed her to receive the stocks and money arising from their sale, and then borrowed from her and given his note, there might be ground for relief. But as it is, John P. McLear did nothing but give his promise to his wife, who was not capable in law of receiving it or profiting by it. It is to be regretted that Amelia F. McLear cannot be admitted on common and equal grounds with other creditors; but the court does not see how it can be done consistently with the decisions controlling such causes. The claim must, therefore, be stricken off. Let such an order be entered.