---

GEORGE A. ELLIS, Respondent, v. REUBEN J. MEYERS, as Assignee, etc., *et al.*, Appellants.

*Supreme Court, Fourth Department, General Term, December 7, 1889.*

1. *Assignment for creditors. Fraud.*—The mere omission from the schedule of a claim in favor of the assignor does not warrant a finding that the assignment is fraudulent.

2. *Same. Husband and wife.*—A promise to repay loaned money forms a good consideration to support a conveyance of real estate from husband to wife, though their marriage took place before the act of 1848.

3. *Same. Limitations.*—In such case, the payment by the conveyance waives the statute of limitations in favor of the wife's claim as against the husband's creditors.

Appeal from a judgment entered in Tompkins county upon a decision made at special term held in that county. It was found as a matter of fact by the trial court that upon the 19th day of January, 1888, Oliver Cady and John E. Cady executed and delivered to Reuben J. Meyers a general assignment, " both as individuals and copartners, which assignment was in due form of law, and was duly accepted by said Meyers as assignee, and he duly executed and filed his bond as such assignee and entered upon the discharge of his duties." That on the 6th of February, 1888, an inventory and schedules were filed in the clerk's office, showing the liabilities to be the sum of $31,210.99, and the actual worth of their assets $12,105.55. On the 23d day of February, 1888, the plaintiff recovered a judgment against Cady for $5,291.67, " the same being upon an indebtedness which accrued some three years prior to the said judgment. An execution was duly issued thereupon to the sheriff of the county of Tompkins, in which county the said defendants then lived, which execution was thereafter, and before the commencement of this action, duly returned wholly unsatisfied."

The trial court further found, viz.: " That the aforesaid general assignment for the benefit of creditors, made by the said Oliver Cady and John E. Cady to the defendant Meyers, was fraudulently made with the intent on the part of the said assignors to hinder, delay and defraud their creditors and this plaintiff." Also: " That by reason of said assignment, the creditors of the said assignors, and this plaintiff, have been hindered, delayed and defrauded in the collection of their debts." Also: " That the defendant, Meyers, did not participate in and had no knowledge of the fraudulent intent of the assignors."

As matter of law, it was found: " That the said general assignment made by the defendants, Cady, to the defendant, Meyers, is void as to this plaintiff."

*Rich & Dutton* and *S. E. Payne*, for appellants.

*Almy & Bouton*, for respondent.

HARDIN, P. J.—On the 11th day of January, 1888, Oliver Cady executed a conveyance of 120 acres of land to his wife Cornelia Cady, ostensibly in payment and discharge of an indebtedness of his to her which arose during their married life. All the facts and circumstances relating to that indebtedness were disclosed by evidence. The trial judge was requested to find as follows : " That on the 11th day of January, 1888, the said Oliver Cady conveyed to said Cornelia Cady one hundred and twenty acres of land by deed, which said deed contains a full description of said lands, and the sale was recorded in Tompkins county clerk's office, January 20, 1888. That said conveyance was in payment of and in full satisfaction of said indebtedness then due and owing from said Oliver Cady to said Cornelia Cady, and the said land was of the value of $——." He refused to make the finding. We are called upon to inquire whether that proposed finding accords with the evidence.

In the memorandum which the trial judge delivered accompanying his decision of the case, he remarked : " I think, from the evidence, that over forty years ago, Oliver Cady obtained from his wife the sum of money claimed. I think, furthermore, that he obtained from his wife the sum of money claimed at the death of Mr. Goddard. These moneys were used for their joint benefit, without an intention, and *without a promise by Oliver Cady to his wife to repay them.* * * * During the whole forty years no recognition of that as a debt was ever made until within a month or two of the assignment. All these circumstances lead me to the conclusion that there never was a promise, express or implied, by Oliver Cady to repay those sums to his wife, and that, at the time of the assignment, there was no indebtedness, legal or equitable, from him to her."

Mrs. Cornelia Cady was placed upon the stand as a witness by the plaintiff. He thus vouched for her credibility and reliability as a witness. From her testimony we learn that she was a daughter of John Phillips, who died when she was about six years of age, and that her uncle, Schuyler Goddard, was appointed her guardian after the death of her father, and that the guardian made several loans of money belonging to the estate of her father to Oliver Cady and received his notes therefor. By a release, which was produced in evidence, executed by Oliver Cady and Cornelia Cady, bearing date the 24th day of May, 1845, it appears that there was a settlement between Schuyler Goddard, as such guardian, and a recital therein that Cornelia and Oliver had " received from said Schuyler Goddard $842.42, in full of all demands against him " as such guardian ; " that receipt was corroborated by the testimony of Mrs. Cady and of her husband, Oliver Cady ; and there is no evidence in the appeal book to the contrary on the subject of the amount of moneys that came from the estate of Mrs. Cady's father. The fact should therefore be regarded as satisfactorily established. It also appears that Mrs. Cady became entitled to certain moneys from the estate of Schuyler Goddard after his death, and that Augustus Phillips, brother of Mrs. Cady, was appointed executor, and that she had a settlement with the brother in reference to the estate of her uncle, Schuyler Goddard ; and that the executor turned out to her a note of $600, which he had taken from Oliver Cady in settlement of Mrs. Cady's interest in Schuyler Goddard's estate ; the note was produced upon the trial. It bears date February 29, 1864, and is for $600 and interest, and was executed by Oliver Cady and John Cady, and there had been endorsed thereon $42, in payment of interest, March 6, 1865.

Mrs. Cady testifies that her husband said to her he would pay this money and the interest upon it to her. The origin and existence of the indebtedness of $600, is also stated in the testimony of Oliver Cady, and that Mrs. Cady had not

been paid at the time of the execution of the deed in question, on the 11th of January, 1888, either the money which her husband had received from her father's estate, or the indebtedness which accrued as has just been stated. Mrs. Cady testifies that she turned over the notes which came to her from her guardian, Goddard, to her husband; and she says, viz. : "At that time he told me he would pay me the money back, and the interest on it. That was in 1844. He said that when he got the money." She testified, in speaking of the $600 received from the Goddard estate, viz.: " My husband said that he would pay this money to me and the interest when he could; he told me last November or December that he would give me a deed to pay me what he owed me." Mrs. Cady is not a party to the action, and after making due allowance for her relation to the defendants after weighing her testimony in connection with the papers produced, and the evidence of her husband, so far as it corroborates her testimony, we are led to the conclusion that at the time her husband received the several sums of money there was an agreement that he should return the same with interest to her; and we are of the opinion that the indebtedness formed a consideration for the conveyance which she received from her husband. It was competent for him to pay that indebtedness; it was lawful for her to receive the payment thereof by the conveyance in question. Grafel *v.* Hodges, 17 N. Y. State Rep. 87.

In Jewett *v.* Noteware, 17 Weekly Dig. 438, it appeared that a debt, eighteen years after its origin, was secured by a mortgage together with the interest on the indebtedness ; that indebtedness was due to a wife for money borrowed, and the intent of the husband in executing the mortgage " was to secure his wife in any event," and it was held, viz. : " that as the debt was *bona fide,* the judgment creditor could not attack the mortgage."

Although the marriage between Mrs. Cady and her husband took place prior to the act of 1848, for the protection of

the property of married women, his promise to her made to reimburse her the money which he borrowed from her furnishes the foundation in equity for upholding a conveyance made for that purpose. He had a right to decline to assert absolutely his marital rights to the personal property of his wife, and to borrow the money of her with the understanding and agreement that it should be repaid.

In Jaycox *v*. Caldwell, 51 N. Y. 395, it was held in the case involving a similar question, that " the agreement is for a good consideration, and imposes an equitable obligation upon the husband ; and a preference of the debt in good faith and without an intent to defraud, in an assignment for the benefit of creditors, is legal and does not vitiate the assignment." And it was further said in that case that there is no distinction between cases where the property at the time of marriage consisted of money in the possession of the wife and those where it consisted in choses in action. The doctrine laid down in Jaycox *v*. Caldwell, 51 N. Y. 395, was reaffirmed by the court of appeals in Syracuse Chilled Plow Co. *v*. Wing, 85 N. Y. 426.

We think it is quite apparent from the evidence that Mrs. Cady expected to receive a return of the money which she allowed to pass into the hands of her husband, with interest thereon, and that he promised from time to time after receiving the money to make good the same to her, and that he had never done so prior to the conveyance of the 120 acres. We think these remarks appropriately apply to the money which came from her father's estate as well as the money which came from her uncle's estate. We, therefore, differ with the learned trial judge and cannot accede to the comments made upon that transaction in his memorandum.

While the plaintiff was at liberty to contradict the evidence given by Mrs. Cady, and to prove the facts other than as stated by her, yet we think that such contradiction and proof are not furnished.

We are of the opinion that the trial judge should have found

in accordance with the request made in regard to the indebtedness to Mrs. Cady, at the time of the execution of the deed of 120 acres, and that the conveyance was made for the purpose of paying to her a valid indebtedness.

It does not aid the respondent's case if it be conceded that she had no demand in January, 1888, which in law she could have enforced as against the statute of limitations ; the plaintiff is not in a situation to insist upon the statute of limitations against that indebtedness. That defense is personal to the debtor, and manifestly was waived when the settlement and payment of the indebtedness took place by means of the conveyance. See Jaycox *v.* Caldwell, *supra.*

If the trial judge had found in accordance with the views which we have expressed upon the subject we have been considering, it is inferable that his general finding that the assignment in question was fraudulent, in fact might have been otherwise. We therefore think there should be a new trial.

(2) We think the criticism that the schedule of assets did not contain a claim of $1,000 in favor of Oliver Cady against one of his daughters is not sufficient to warrant a finding that the assignment was fraudulent in fact. After an inspection of the evidence we are inclined to think there is some doubt as to the validity of any such supposed indebtedness. However, if it be a valid claim, the schedule may be amended and the assignee may bring an action to recover the indebtedness ; if there was one existing, it would pass under the assignment to the assignee even if omitted from the schedule. Warner *v.* Jaffray, 96 N. Y. 253 ; chap. 466, Laws 1887.

We see nothing in the circumstances attending the omission of the alleged indebtedness of the daughter to Cady from the schedule made after the assignment, which clearly or satisfactorily establishes an intent on the part of the assignors in the execution of the assignment to commit a fraud upon their creditors. Clark *v.* Taylor, 37 Hun, 314.

There is no collusion shown on the part of the assignee in respect to that supposed indebtedness or the withholding

of the same from the schedules. If any remedy is needed in respect to that indebtedness, it may be sought by the assignee in proceedings to have the schedule and inventory amended, or by bringing an action to recover the amount of the indebtedness. Miller *v.* Halsey, 4 Abb. N. S. 28 ; Wilson *v.* Forsyth, 24 Barb. 105 ; American Exchange Bank *v.* Webb, 15 How. Pr. 193 ; Carpenter *v.* Muren, 42 Barb. 300.

Judgment reversed on the exceptions, and a new trial ordered, with costs to abide the event.

MARTIN, J., concurs ; MERWIN, J., concurs in the result.

---

### NOTE ON "EXECUTION OF GENERAL ASSIGNMENT."

The provisions of chap. 294 of 1888, requiring every assignment for creditors to specifically state therein the residence and kind of business carried on by the debtor at the time of making the assignment, and the place at which such business shall then be conducted, and, if such place is in the city, the street and number thereof, and if in a village or town, such apt designation as shall reasonably identify such debtor, are obligatory. Bloomingdale *v.* Seligman, 22 Abb. N. C. 98. A non-compliance therewith renders the assignment void. Id.

The provision of the statute requiring the statement in an assignment for creditors of the place of business or residence of the assignor is directory not mandatory. Otis *v.* Hodgson, 63 Hun, 634. A failure to make such statement does not invalidate the assignment. Id.

See also Dutchess Co. Mut. Ins. Co. *v.* Van Wagonen, 132 N. Y. 398.

The requirement that the assignment designate the residence and business of the debtor, is only directory. Taggart *v.* Sisson, 55 Hun, 369.

The failure to state in a general assignment the debtor's name, etc., vitiates it. Bloomingdale *v.* Seligman, 19 N. Y. St. Rep. 64.

An assignment for creditors, which fails to state the residence, business and place of business of the assignor is not void. Boak *v.* Blair, 57 Hun, 591.

The requirement of the statute as to the place and kind of business, is directory. Strickland *v.* Laraway, 55 Hun, 612.

The latter clause of section 2, chap. 466 of 1877, authorizes an assent of the assignee separate from the assignment. Franey *v.* Smith, 125 N. Y. 44.

The assignee's subscribing the assignment is a sufficient assent. Scott *v.* Mills, 115 N. Y. 376.

Record is presumptive evidence of delivery. Id.

Under § 2, chap. 466 of 1887, requiring the assent of the assignee to be embodied before the assignment is recorded, an assignment recorded with-

out such assent is defective, and the defect is not cured by making and recording the assent separately, even though done immediately on discovering the inadvertent omission. Schwartz *v.* Soutter, 41 Hun, 323; Noyes *v.* Wermberg, 15 Abb. N. C. 164.

The recording of the assignment is necessary to its validity. Franey *v.* Smith, 125 N. Y. 44.

The schedules, executed and acknowledged at the same time with the assignment, though subsequently annexed, do not invalidate the assignment, if done before the intervening of adverse rights. Id.

Where a schedule of preferred creditors, referred to in a general assignment, was annexed to the instrument, contained in the certificate of acknowledgment, by the parties, and was not filed with the county clerk until three days after the filing of the assignment, the assignment was held to be void for failure to comply with the requirements of the statute. Franey *v.* Smith, 47 Hun, 119.

An honest mistake in describing the debtor, or as to the amount due on a preferred claim, does not render the assignment void. Roberts & Co. *v.* Vietor, 54 Hun, 461.

Nor does failure of assignors to keep certain account books during portion of time. Id.

The inventory of debts need not, in addition to the specification of date, times of payment, payees, etc., of promissory notes, state for what they were given. Pratt *v.* Stevens, 94 N. Y. 387.

Such inventory is not defective by reason of the omission of any statement of a chattel mortgage executed by the assignor, which is clearly void as to creditors. Id. So the addition of the words "to deponent's best knowledge, information and belief," to the affidavit of verification of the inventory by the assignor, does not affect its validity. Id.

It has been held that the title vests in the assignee, upon the delivery of the assignment, even before recording, although the assignment is, by the provisions of the statute, required to be recorded; that the provisions of the statute, requiring the assent of the assignee to be subscribed and acknowledged by him, etc., are complied with by a signing and acknowledgment of the instrument without express words of consent, and that the statute providing due employees shall be preferred does not invalidate the assignment, though it contains no provision for such employees. Warner *v.* Jaffray, 96 N. Y. 248; Richardson *v.* Thurber, 104 Id. 606; Nicoll *v.* Spowers, 105 Id. 1; Franey *v.* Smith, 125 Id. 44; Dutchess Co. Mut. Ins. Co. *v.* Van Wagonen, 132 Id. 398.

Chap. 328 of 1884, which provided that in all assignments under the act, the wages or salaries due to employees should be preferred before any other debts did not require the provision for such preference to be inserted in the instrument, nor render an assignment void by reason of the omission of such provision. Richardson *v.* Thurber, 114 N. Y. 606; Same *v.* Herron, 39 Hun, 537; Burley *v.* Harston, 40 Id. 121; Johnston *v.* Kelly, 43 Id. 379. But it impressed the statutory preference upon the trust fund in the hands of the assignee. Id.

An assignment for the benefit of creditors, executed as prescribed by the general assignment act, amended by chap. 318 of 1878, takes effect as to property in this state from the time of its delivery, not from the time of its record in the proper county. Nicoll *v.* Spowers, 105 N. Y. 1.

Under the amendment of chap. 318 of 1878, an assignment takes effect when executed and delivered. Warner *v.* Jaffray, 96 N. Y. 248. The subsequent requirements of the statute, such as recording, are directory, and the omission or delay to comply with them, does not defeat the assignment. Id.

An assignment of all the property contained in schedule B, to pay the debts mentioned in schedule A, and referring to the schedules as annexed, though not so annexed in fact, and not recorded in the office of the county clerk with the assignment was held, in Burghard *v.* Sondheim, 50 Supr. 116, to be valid in an action to set it aside. Neither of the schedules was a necessary part of the assignment.