Foster, P. J.
Plaintiff appeals from an order and judgment of nonsuit granted at the close of plaintiff’s case.
Plaintiff’s intestate met his death by electrocution at the Saratoga County Fair grounds on July 21, 1948. These grounds are owned by the defendant in this action. The intestate was employed as a meter reader by the New York Power and Light Corporation, and was engaged in the course of his employment when he received a lethal shock of electricity.
The evidence produced by the plaintiff showed that the meter which the intestate was engaged in reading at the time of the accident was enclosed in a box or cabinet, and located on the northerly wall of a building known as a tool house. Surrounding an area about eight by ten feet to the north of the tool house, and joined thereto, was a solid board fence with a solid board door. The fence was about seven feet high, but had no roof or cover. The north wall of the tool house formed the south wall of this enclosure. Within the enclosure were the meter and meter box, a 100 KVA transformer with which we have no concern, and a pole, on the crossarm of which were a current transformer and a potential transformer. The electric current to this installation came from a main line of the power company located on an adjacent street, which carried from 2,300 to 2,400 volts. This voltage was supposed to be stepped down to 120 volts so far as the meter was concerned, by the transformers on the pole. There was also a wire, covered with wooden moulding, on the pole, called an instrument ground. The purpose of this was to protect the instruments below the pole transformers from an overload of current. ■
After intestate’s death an investigation showed that the current transformer had become defective, and instead of reducing the voltage from the main line had permitted a full charge of 2,300 or more volts into the meter box which intestate *744 was handling. Further investigation showed that the ground wire along the pole was inadequate and had burned off. There was no direct proof as to what caused the break down of the current transformer but a fair inference could be drawn that it was caused by a severe electrical storm some two weeks before. Other installations on the fair grounds were damaged at the time, and there was a burned spot on the pole carrying the ground.
Negligence, we think, could be found from the foregoing facts, at least if the most favorable inference rule be applied; but the problem presented is rather one of responsibility. On that issue plaintiff’s proof showed that the fenced inclosure with all its equipment was wholly under the control of the power company. The door to it was padlocked and only employees of the power company had keys to the lock. None of the defendant’s employees had the means of access to its interior. There was testimony to indicate that the power company kept the enclosure locked because it did not want the public or its own customer to have access, and the defendant submitted to this arrangement.
Under this set of circumstances we think there was no liability on the part of the defendant, and that the nonsuit was proper. The relationship between the defendant and the power company was substantially that of lessor and lessee. Possession and control of a specific part of defendant’s premises was given to the power company. A tenancy at will arose by implication, and the obligation to pay rent is not a necessary incident of such tenancy (New York Law of Landlord and Tenant, Vol. 1, § 155). A lease may be created by conduct expressing consent to the lessee’s possession (2 Restatement, Torts, § 355). A lessor who had relinquished control of the premises is not liable, as a general rule, to employees of a lessee for personal injuries caused by the unsafe condition of the demised premises; and this is true even where a covenant to repair by the lessor has been made (Cullings v. Goetz, 256 N. Y. 287). Nor is a lessor generally liable to those upon the demised premises with the consent of the lessee for any bodily harm caused by a dangerous condition, whether natural or artificial, which existed when the lessee took possession, or which came into existence thereafter (2 Restatement, Torts, §§ 355-356). The only exception to this rule is where the lessor rents premises for a public use when he knows, or should have known, that they are in a dangerous condition (Campbell v. Holding Co., 251 N. Y. 446; Junkermann v. Tilyou Realty Co., 213 N. Y. 404). The proof in this case does not bring it within the exception. *745 The defendant cannot be held to knowledge of defective electrical installations over which it had no control or means to investigate.
Moreover the liability of a lessor to third persons who are on the demised premises at the invitation of a lessee is nr greater than his liability to the lessee (Jaffe v. Harteau, 51 N. Y. 398). In the present case the intestate was in truth the alter ego of the lessee power company. The latter had come in the person of the intestate to perform a function connected with its own equipment over which it had exclusive control. In the light of this fact, and if our appraisal of the relationship between the defendant and the power company is correct, the cases cited by appellant have no application.
The order and judgment should be affirmed, without costs.
Heffernan, Brewster, Bergan and Coon, JJ., concur.
Order and judgment affirmed, without costs.