KELLEY, RESPONDENT, *v.* JEFFERIS, APPELLANT.

[Argued, January 30, 1893.  Decided April 18, 1893.]

MARRIED WOMEN—*Separate property list and sufficiency of record—Statutory construction.*—A chattel mortgage containing a complete description of the separate property of a married woman, executed by her and filed and properly indexed in the county recorder's office, is a sufficient list and record within section 1432, fifth division, of the Compiled Statutes (Act of 1872), exempting the property of a married woman from her husband's debts when mentioned in a list thereof on record in such office, no particular form of the list or method of record being provided for.  (*Griswold* v. *Boley,* 1 Mont. 556, cited.)

SAME—*Liability for husband's debts—Statutory construction.*—Section 1439, fifth division, of the Compiled Statutes (Act of 1887), declaring in effect that women shall retain the same legal existence after marriage as before, and receive the same protection of her rights as a woman as her husband does as a man, and shall have the same right as her husband to appeal to the courts for redress for injuries to her person or property, so modifies the Act of 1872 (§ 1432) as to enable a married woman to hold her separate property as against her husband's creditors without having a list thereof on record, on showing facts establishing her individual title thereto.

SAME—*Property rights under Act of* 1887.—The said Act of 1887 is a legislative direction to the courts of this state, where a united jurisprudence of equity and law is administered, to disregard the ancient common-law fiction of the merger of a wife's legal personality in that of her husband, and to enforce and protect the rights of a married woman according to the doctrines of equity which considered her a *feme sole* as to her separate property.

*Appeal from First Judicial District, Lewis and Clarke County.*

Action for conversion. Judgment was rendered for plaintiff below by BUCK, J. Affirmed.

*A. K. Barbour*, and *J. A. Carter*, for Appellant.

I. The court below held that section 1439, the so-called Emancipation Act, repealed the Statute of 1872. It is true that section 1440 declares as follows: "All laws or portions of laws inconsistent with the foregoing (§ 1439) are hereby repealed"; but that does not of itself repeal the statutes in question. (Endlich's Interpretation of Statutes, § 205; *People* v. *Durick*, 20 Cal. 94; *Hickory Tree Road*, 43 Pa. St. 139; *State* v. *Macon Co. Ct.*, 41 Mo. 459.) For the legislature to say that a married woman retains the same legal existence and legal personality as before marriage is essentially judicial, and is therefore unconstitutional. (Cooley's Constitutional Limitations, 89, p. 108.) The so-called Emancipation Act (§ 1439) was passed while Montana was a territory. At that time the legislative power in each territory was vested in the governor and a legislative assembly (Mont. Comp. Stats., § 1846, p. 22); the judicial power was vested in a supreme court, district courts, probate courts, and in justices of the peace. (Mont. Comp. Stats., § 1907, p. 40.) And it was provided that the legislative power should extend to all rightful subjects of legislation not inconsistent with the constitution and laws of the United States. (Mont. Comp. Stats., § 1851, p. 23.) The organic act, unlike the constitutions of the states, is a grant, and not a restriction of power primarily possessed. The term "rightful subjects of legislation" is a restriction imposed by Congress on the grant. No legislature, as such, has any power other than that of making laws. Laws, in the sense in which the word is here employed, are rules of civil conduct. (*Ponder* v. *Graham*, 4 Fla. 43.) That marriage makes the hus-

band and wife one legal person was one of the best settled fictions of the common law. (Stewart's Husband and Wife, § 38.) Fiction is the legal assumption that something which is or may be false is true. The law-making power has no need to resort to fictions. It may establish its rules with simple reference to the truth; but the courts which are confined to the administration of existing rules, and which lack the power to change those rules, have frequently avoided the injustice that their application to the actual facts might cause, by assuming, in behalf of justice, that the actual facts are different from what they really are; its proper operation being to prevent a mischief, or remedy an inconvenience that may result from the general rule of law. (Bouvier's Law Dictionary; 3 Blackstone's Commentaries, 43.) Fiction is, in English law, an ancient substitution of legislation. (7 Am. & Eng. Ency. of Law, p. 957, n. 4.) We submit that fictions have always emanated from the judiciary, and that a proposition, declared a legal fiction, cannot be abrogated by direct legislation; and that the only province of the legislature concerning a legal fiction is to modify the incidents thereof. That by marriage the husband acquires title to the wife's personalty is the rule of law at common law. (2 Blackstone's Commentaries, 433.) We submit that the foregoing proposition is an incident of the fiction of unity, and that it has never been declared in apt terms to be a legal fiction, nor that the proposition of the legal fiction of unity has never been declared in apt terms to be the rule of law. It is impossible for the legislature to convert a wife into a *feme sole,* so far as relates to her property, while she is to continue to discharge the duties of a wife. (See *Snyder* v. *People,* 26 Mich. 109; 12 Am. Rep. 302; *Bear* v. *Bear,* 33 Pa. St. 525; *Cole* v. *Van Riper,* 44 Ill. 58; *Walker* v. *Reamy,* 36 Pa. St. 414–16; *Avery* v. *Doane,* 1 Biss. 64; *Bertles* v. *Nunan,* 92 N. Y. 152; 44 Am. Rep. 361; *Board of Trade* v. *Hayden,* 4 Wash. 263; 31 Am. St. Rep. 919; *Althen* v. *Tarbox,* 48 Minn. 18; 31 Am. St. Rep. 616; Bishop on Contracts, § 948, p. 373.) For the legislature to say that a married woman shall receive the same protection of all her rights as a woman which her husband does as a man, is nearly as supererogatory as to say that a defendant shall receive the

same protection of all his rights as a defendant which plaintiff does as a plaintiff, and is clearly incompetent, for all individual rights are protected by the administration of laws through the instrumentality of a judiciary. (See *Ervine's Appeal,* 16 Pa. St. 256; 55 Am. Dec. 499; *Greenough* v. *Greenough,* 11 Pa. St. 489; 51 Am. Dec. 567; *Clapp* v. *Ely,* 27 N. J. L. 622; *City of Janesville* v. *Carpenter,* 77 Wis. 288; 20 Am. St. Rep. 123; *Meyer* v. *Berlandi,* 39 Minn. 438; 12 Am. St. Rep. 663. See also *Calhoun* v. *McLendon,* 42 Ga. 405; *Bear* v. *Bear,* 33 Pa. St. 525; *Bertles* v. *Nunan,* 92 N. Y. 152; 44 Am. Rep. 361.) We cite authorities on the question of the unity of husband and wife not because all of such decisions were upon statutes identical with our so-called Emancipation Act, but to demonstrate that the fiction of unity must remain a solemn declaration of the nature of the relation, resting upon a matter of natural creation, not to be entirely swept away by a direct legislative enactment; and that the court below erred in its declaration of the repealing effect of the so-called Emancipation Act. We submit that under our plan of the people being sovereign, only the incidents of the fiction of unity should be deemed rightful subjects of legislation. (See Mont. Const., art. III, §§ 1, 30; *Bingham* v. *Miller,* 17 Ohio, 446; 49 Am. Dec. 471.)

II. There is no sufficient property list. The instrument in question was not even filed for record, but simply filed in an attempt to comply with the statutes relative to the filing of chattel mortgages. It is not on record; it is simply on file; and not legally on file, because it did not comply with the requirements of the statute. Record is a written memorial made by a public officer authorized by law to perform that function, and intended to serve as evidence of something written, said, or done. (Bouvier's Law Dictionary.) The mere filing of an instrument is insufficient as notice when the statute requires it to be on record. (*Ritchie* v. *Griffith,* 1 Wash. 429; 22 Am. St. Rep. 155; *Scott* v. *Doe,* Hemp. 275.) The converse of this proposition was held in *Chapin* v. *Kingsbury,* 135 Mass. 580.

*F. N. & S. H. McIntire,* for Respondent.

The decisions of this court show how long the "fiction of unity," as regards the wife's separate estate, has been abolished

and the common-law rule has been set aside. (*Griswold* v. *Boley*, 1 Mont. 545; *Boley* v. *Griswold*, 2 Mont. 447; *Palmer* v. *Murray*, 6 Mont. 125; 8 Mont. 174; *Palmer* v. *Mc-Master*, 8 Mont. 186.) "In all the states statutes have been passed destroying more or less the husband's common-law rights in his wife's property or in portions thereof, and securing such property to a greater or less extent to her own use and enjoyment." (Stewart on Husband and Wife, § 217.) Even is this so in England, the mother of that same common law that counsel urge upon us. (45 and 46 Vict., c. 75.) There is nothing in the point that the action of the legislature in defining the existence and personality of the wife is unconstitutional. There is no prohibition in our constitution against it (Stewart on Husband and Wife, § 9), and the matter was certainly a proper subject of legislation. This law was enacted before the adoption of the constitution, and is of equal force. (Const. of Mont., art. XX, § 1.) The statute (Comp. Stats., § 1439, div. 5) indicates the legislative intent so clearly that there can be no question of what it was; and as to that legal fiction that a man and his wife are one person it seems to us to have been torn to tatters in Montana. (Stewart on Husband and Wife, § 338.) We do not contend that all the disabilities of coverture at the common law have been swept away by the legislature, and in this respect agree with the views of *Bertles* v. *Nunan*, 92 N. Y. 152. So far as plaintiff's right to the property purchased with her money, owned by her before her marriage, is concerned, it was absolute (*Gauley* v. *Troy City Nat. Bank*, 98 N. Y. 487), and she may maintain suit in ejectment against her husband to recover her separate estate. (*Wood* v. *Wood*, 83 N. Y. 575.) Also in detinue, replevin, and as garnishee. . (*Scott* v. *Scott*, 13 Ind. 225; *Jones* v. *Jones*, 19 Iowa, 236; *Howland* v. *Howland*, 20 Hun, 472; *Tunks* v. *Grover*, 57 Me. 586.) She may sue alone. (*Palmer* v. *Murray*, 6 Mont. 125.) The fact that the husband was in possession of the property does not affect the case at all. She could properly make him her agent. (*Palmer* v. *Murray*, 8 Mont. 184; Stewart on Husband and Wife, § 82.) If the husband is not liable for the debts of the wife contracted before marriage, and her rights are the same as his, certainly her

property should not be liable for his debts contracted before marriage. The true intent of the legislature on this question can be gathered by reading together the Compiled Statutes, §§ 1439, 1445.

II. The chattel mortgage was a sufficient notice to the world of the plaintiff's title to the property therein described, and even if a list of separate property was necessary the mortgage was sufficient as such. (*Griswold* v. *Boley, supra; Palmer* v. *Murray, supra; Montana Impr. Co.* v. *Colter,* 7 Mont. 541.) The defendant was a mere trespasser. In such case no list is necessary. (*Palmer* v. *Murray, supra.*) We maintain that since the adoption of section 1439 no list of separate property is necessary. A married woman's rights are the same as those of a *feme sole.*

HARWOOD, J.—This action is prosecuted to recover damages for the alleged wrongful seizure and conversion of personal property. Plaintiff, Violet M. Kelley, is and was a married woman, residing with her husband, James J. Kelley, in the city of Helena, county of Lewis and Clarke, Montana, during all the times when the facts in this case transpired. It appears that, at the time of her marriage, plaintiff possessed the sum of seven hundred dollars in money, her own individual property, acquired prior to marriage; that, soon after said marriage, plaintiff invested said money in certain articles of saloon furniture, described in the complaint, all alleged to be of the value of seven hundred dollars; that, after the purchase of said chattels, plaintiff executed and duly acknowledged, in the manner required by the laws of this state, an instrument intended to be a chattel mortgage on said furniture, which instrument was filed for record in the office of the county clerk and recorder of Lewis and Clarke county, where said property was situate; that said chattels were used as the furniture of a place in said city, where plaintiff carried on, in her own name, the business of selling, at retail, liquors, cigars, and other goods usually sold in a saloon; that plaintiff's husband acted as her agent in carrying on said business in plaintiff's name; that, while plaintiff so owned and used said furniture, the same was seized and sold by appellant, acting as sheriff of said county,

under execution issued against plaintiff's husband, to enforce a judgment obtained against him on his indebtedness, contracted and owing prior to his marriage with plaintiff; whereupon plaintiff instituted this action to recover the value of said property as damage for the alleged wrongful seizure and conversion thereof, alleging the same to be her sole and separate property. Defendant, by answer, denied the allegation of plaintiff's complaint, to the effect that she was the owner of said chattels, in her sole and separate right, or was entitled to the possession thereof, when defendant seized the same; and defendant set up the seizure, under execution issued upon said judgment, against James J. Kelley, in justification of the taking of said property. The trial resulted in judgment for the plaintiff in the sum of five hundred and fifty dollars, and costs of suit, for which defendant prosecutes this appeal.

The contention of appellant is that, admitting the facts to be as epitomized above in reference to said property, plaintiff is not entitled in law to recover damages for the seizure thereof by appellant, in satisfaction of the execution against plaintiff's husband. If respondent's claims upon the property in controversy were to be determined entirely by an application of the principles of the common law in relation to the rights and disabilities of married women on the subject of holding property, appellant would doubtless prevail in his contention that said property was subject to seizure and sale to satisfy the liability of plaintiff's husband. But there are statutes in this state, existing when these facts arose, which modify the rules of the common law in this respect; and this case, we apprehend, must be determined by a consideration and application of those statutes. An act of January 12, 1872, now constituting section 1432 of the Compiled Statutes, provides "that the property owned by any married woman before her marriage, and that which she may acquire after her marriage, by descent, gift, grant, devise, or otherwise, and the increase, use and profits thereof, shall be exempt from all debts and liabilities of the husband, unless for necessary articles procured for the use and benefit of herself and her children under the age of eighteen years; provided, however, that the provisions of this chapter shall extend only to such property as shall be mentioned in a

list of the property of such married woman as is on record in the office of the register of deeds of the county in which such married woman resides." In 1874 another statute was enacted by the legislature, authorizing any married woman residing in this state to engage in and carry on business, as sole trader, in her own name, and on her own account; and providing that neither her property embarked in such business, nor the proceeds thereof, shall be subject to her husband's debts. By that statute the married woman intending to become such sole trader was required to make and acknowledge before any person authorized to take acknowledgment of deeds in Montana, and record in the office of the county clerk and recorder of the county wherein the business was to be transacted, her declaration, describing the proposed business, and setting forth her intention to engage therein as sole trader. (See Sess. Laws, 1874, p. 93; also same statute in sections 1433–38, div. 5, Comp. Stats.) This statute has been superseded by another of similar effect, but providing a different manner of procuring for record the declaration as sole trader. (Sess. Laws, 1891, p. 263.) These statutes as to married women becoming sole traders are referred to as showing the course of legislation in this jurisdiction respecting the property rights of married women; but it is not contended by either party that the statute in reference to married women becoming sole traders has any particular bearing upon this case. It was asserted on the argument that certain of plaintiff's merchandise, connected with said business, was seized along with the furniture; but plaintiff does not contend that she could hold the merchandise, because she had not complied with the statute as to sole traders. She insists, however, that the property under consideration in this suit was not in trade, nor in market for sale, but was simply chattels belonging to her, and in her personal use. The next statute relative to the rights of married women in Montana, which should be considered in determining this case, became a law in 1887, and reads as follows: "That from and after the passage of this act, women shall retain the same legal existence and legal personality after marriage as before marriage, and shall receive the same protection of all her rights as a woman which her husband does as a man; and, for any in-

jury sustained to her reputation, person, property, character, or any natural right, she shall have the same right to appeal in her own name alone to the courts of law or equity for redress and protection that her husband has to appeal in his own name alone." (Comp. Stats., div. 5, § 1439.)

Plaintiff relies upon the provisions of the statute first and the last above quoted as sufficient to support her recovery upon the facts shown in this case. It is contended on her behalf that section 1432 was sufficiently complied with by filing in the office of the register of deeds of the proper county the instrument intended as a chattel mortgage on the property in question, and containing a complete list and description thereof executed by plaintiff to Weber & Meile Co., of Chicago, Illinois. The provisions of that section do not require any particular form of such list, nor that it shall be placed on record in any special way. Chattel mortgages filed and entered in the proper indexes, as required by the statutes of this state, are on record in the office of the register of deeds, to all intents and purposes, for giving notice of the contents thereof, although not required to be transcribed on to the pages of a book kept in said office. In that form the instrument mentioned contained a list of the property in question, on record in the office of the register of deeds of the county where plaintiff resided. It does not seem to be an unwarranted construction of said statute to hold that the legislature intended, as to the list required to appear "on record" in said office, that such list might appear by an examination of any records of said office, pertaining to property such as deeds, mortgages, or other conveyances or instruments of record, affecting the title, or showing apparent ownership, or interest in property, sufficient to put a party interested upon notice. Such records are readily accessible, and are usually consulted by those seeking information as to the ownership of property, so far as disclosed by the public records in said office. If the legislature intended to require that the record of a married woman's separate property should appear in any particular form or book or instrument recorded in that office, it seems reasonable to suppose such intent would be manifest by an appropriate provision of said act, designating the form or record wherein such list must appear. The most

reasonable conclusion, we think, is that the legislature, in view of the fact that persons investigating the records of said office as to the title of property are presumed to examine the various instruments of record there affecting title or showing apparent ownership, and take notice of the contents thereof, left this provision broad enough to include all such records. This appears to be the view held in *Griswold* v. *Boley,* 1 Mont. 556. Such record only gives notice that the property in question is ostensibly held in the name of a married woman as her own property. It would certainly not be conclusive evidence of ownership. The facts supporting ownership or acquirement of property through the source mentioned in the statute must exist, or the mere record would be unavailing. The facts set forth in this case as to the means whereby plaintiff acquired this property do not appear to be disputed.

Secondly, plaintiff relies upon the provisions of section 1439 of the statute to sustain her in holding said property in her own individual right, free from the liabilities of her husband. The provisions of that statute undoubtedly absolve married women from certain disabilities imposed upon her status by the common law. It appears to be aimed directly at the fiction of the common law, whereby the legal personality of the wife was regarded as merged by marriage in that of her husband. As one of the logical corollaries deduced therefrom, it became an established principle of the common law that the wife could not own and hold in possession personal property in her individual and separate right; but such property was deemed, in view of the common law, to be in possession of the husband, and subject to his dominion, disposition, and liabilities. Not only so; the personal property belonging to the wife of which the husband could obtain possession was deemed his property, and subject to his liabilities. While these were the prevailing rules of the common law founded upon the fiction that the wife's legal personality was merged in that of her husband by marriage, and this doctrine, with its attending hardships, was constantly illustrated in the face of society by practical experience, equity held a different view. Equity regarded the feme covert as an individual personage, capable of having and retaining property after marriage, which ought in justice to re-

ceive protection, for her individual enjoyment; and, by virtue of the supremacy of the principles of equitable jurisprudence over the common law, equity found means to protect such rights in many, if not in all, cases, notwithstanding the rules of the common law. (Pomeroy's Equity Jurisprudence, §§ 53, 54, 159, 1098; Bispham's Principles of Equity, §§ 96–115; 2 Spence's Equity Jurisdiction, 503; *supra,* pp. 474–533, § 9.)

The course of legislation demonstrates that the doctrines of equity on this subject were approved by common sentiment. Legislation has from time to time swept away at least some of the dogmas of the common law on this subject.   See digest of statutory enactments on this subject in various states, collected in note to *Kirkpatrick* v. *Buford,* 76 Am. Dec. 366.   The legislature of Montana moved in this direction by declaring that "women shall retain the same legal existence and legal personality after marriage as before marriage, and shall receive the same protection of all her rights as a woman which her husband does as a man; and, for any injury sustained to her reputation, person, property, character, or any natural right, she shall have the same right to appeal in her own name alone to the courts of law or equity for redress and protection that her husband has to appeal in his own name alone." (Comp. Stats., div. 5, § 1439.)

This is a comprehensive provision, and commands the courts in this jurisdiction, where a united jurisprudence of equity and law is administered, to disregard the ancient doctrine of the common law on the question under consideration as a dead dogma, and enforce and protect the rights of married women unhampered thereby; and we think the effect of this statute would be to so modify the prior act of 1872, above quoted, as to enable a married woman to hold her individual separate property as against her husband's creditors without having a list thereof on record, on showing the facts necessary to establish her individual title thereto.

The judgment of the trial court is therefore affirmed.

*Affirmed.*

PEMBERTON, C. J., and DE WITT, J., concur.