LAMBRECHT, Appellant, *v.* PATTEN et al., Respondents.

[Submitted January 29, 1895.   Decided February 4, 1895.]

Married Women—*Separate property list—Liability for husband's debts.*—Section 1439, fifth division, of the Compiled Statutes (act of March 3, 1887), sometimes called the "Married Woman's Emancipation Act," and which declares in effect that women shall retain the same legal existence after marriage as before, and receive the same protection of her rights as a woman as her husband does as a man, so modifies the prior act of 1872 (Compiled Statutes, § 1432), as to enable a married woman to hold her individual separate property as against her husband's creditors without having a list thereof on record* on showing the facts necessary to establish her individual title thereto.   (*Kelly v. Jefferis*, 13 Mont. 180, cited.)

Same—*Dealings between husband and wife.*—While it is not fraudulent *per se*, as against his creditors, for a husband to pay his wife a debt which he honestly owes her, yet the relation of husband and wife is often a convenient means for the perpetration of a fraud, and, when claims of indebtedness are made between them, such claims must be subjected to the most searching examination.

*Appeal from Second Judicial District, Silver Bow County.*

Action to determine right to moneys garnished.   The cause was tried before McHatton, J.   Defendant had judgment below.   Affirmed.

Statement of the case by the justice delivering the opinion:
This action was brought to determine the right of plaintiff to certain moneys garnished in an action by her against the defendant Francis E. W. Patten, and which moneys were claimed by the defendant Mary A. Patten as her property.

On November 3, 1886, the plaintiff recovered a judgment for $1,243.51 against defendant Francis E. W. Patten, in the district court of Madison county, Montana territory.   On September 15, 1890, the same plaintiff commenced an action in the district court of Silver Bow county against said Francis E. W. Patten on that former judgment.   A writ of attachment was issued, and the sheriff served garnishment process on Fraser & Ward for all moneys in their hands belonging to the defendant in that case, Francis E. W. Patten.   Judgment in that case was rendered September 30, 1890, for $1,743.63. On the same day an execution was issued, and the sheriff undertook to levy the same upon the moneys of defendant claimed to be in the hands of said Fraser & Ward.   On Octo-

ber 2, 1890, Fraser & Ward were cited before the district court as garnishees. Upon their examination it was found that Mary A. Patten, wife of Francis, claimed as hers the moneys in the hands of the garnishees. The court thereupon ordered Augusta Lambrecht, plaintiff, to bring suit to determine the right to these moneys. The action now before us is that suit. It was tried to the court without a jury. The judgment was that Augusta Lambrecht should not take the said moneys, as they belonged to the said Mary A. Patten, and not to her husband, Francis. The plaintiff appeals.

Francis E. W. Patten and Mary A. Patten were husband and wife. The husband was engaged in the insurance business. There were disagreements between him and his partner, Richards, and he, it appears, was financially involved with the insurance companies in respect to moneys collected in their behalf. Prior to March 3, 1887, Mary A. Patten, the wife, had loaned to her said husband two sums of money; to wit, $666 on November 11, 1885, and $350 on February 6, 1886; and she had also signed a note with her husband on March 17, 1882, for $436.87, payable to Hugh H. Edwards, on which note she was in fact only a surety. Francis Patten being financially involved, as above noted, did, upon consultation with his wife, and on her solicitation, sell the insurance business to Fraser & Ward for the sum of $1,040, which sum was subject to certain reductions by accountings which were to be had, and which finally brought the amount down to $600. In addition to the three items of indebtedness from Francis Patten to his wife, which she pleaded in her answer, and which we have noted above, she also pleads that "In consideration of her assuming the said obligations to said Richards and the insurance companies, the said F. E. W. Patten agreed with her that the said Fraser & Ward should pay to her the entire purchase price of said business, and that the same, after deducting the amount so paid to the said Richards and the insurance companies, was to be applied in payment of the indebtedness to her from said F. E. W. Patten."

The sale of the insurance business, which we have noted, being made to Fraser & Ward, or, as it seems, the firm then was Fraser & Co., it was arranged between the parties that

the money so coming from Fraser & Ward should be paid to Mary A. Patten, the wife, by reason of the indebtedness of her husband to her, above recited. Fraser & Ward thereupon gave the following writing:

"We, the undersigned, agree to pay M. A. Patten, the sum of ten hundred and twenty-five dollars, balance due on the purchase of the Fire Insurance Agency of Patten & Richards, due and payable upon the receipt of the commissions of said companies contained in said agency, at which time all supplies are to be turned over to us.     "W. A. FRASER & Co."

"Butte, Montana, August 14, 1890.

The garnishment in the suit of *Lambrect* v. *Patten* was served on September 15, 1890. Execution was issued, and levy attempted thereunder September 30, 1890, and on September 16, 1890, Fraser & Ward gave the following writing:

"BUTTE CITY, Sept. 16, 1890.

"It is hereby agreed and understood by and between Mrs. M. A. Patten and Fraser & Co. as follows:

"This is to witness and certify that after settlement of accounts made this day between the above-named parties, that there is now due from Fraser & Co. to Mrs. M. A. Patten the sum of six hundred ($600.00) dollars. That the said sum of $600.00 covers and includes and comprises the indebtedness this day existing between the parties in full.

"MARY A. PATTEN,
"W. A. FRASER,
"C. W. WARD."

The position taken by Augusta Lambrecht, in her pleadings and evidence in this her action to subject the $600 coming from Ward & Co. to the payment of her judgment rendered in the case of *Lambrecht* v. *Patten*, was, that Francis E. W. and Mary A. Patten were husband and wife, and that the alleged indebtedness and obligations from said Francis to Mary were fraudulent and void. No special findings were made by the court, but the judgment in effect finds all the material issues in favor of defendant Mary A. Patten. The judgment found that the moneys in question belonged to the said Mary and not to her husband Francis.

*William E. Carroll*, for Appellant.

The alleged agreement between Patten and his wife is within the provisions of section 224 of the Compiled Statutes of 1887, being a contract for the sale of a chattel or thing in action of a greater value than $200, and therefore void as not being in writing or otherwise fulfilling the statute. And being void between themselves any agreement founded thereon, as the instrument in question is alleged to have been, and was in fact a part or branch of the contract, was also void. (*Irvine* v. *Stone*, 6 Cush. 508; *McMullen* v. *Riley*, 6 Gray, 500.) The instrument was a voluntary gift upon the part of Patten to his wife, for the reason that no valid debt subsisted between them. The debts owing by him to his wife were all contracted before March 3, 1887, the date of the passage of the Married Woman's Act, and it is held by this court that the common law was in force, as regards contracts between husband and wife in Montana, up to that date. (*Herron* v. *Frost*, 9 Mont. 308.) The note of November 11, 1885, executed by Patten to his wife was void under the common law. (*Herron* v. *Frost, supra.*) And being void it was inadmissible as evidence of indebtedness under the principles of evidence.

*J. S. Shropshire* and *M. L. Wines*, for Respondent.

We claim that if Patten was justly indebted to his wife he had the right to pay her by making this assignment, and he could prefer her to any other creditor. The assignment having been made before the attachment, it could not be taken by the attaching creditor. (*Walters* v. *Washington Ins. Co.*, 1 Iowa, 404; 63 Am. Dec. 451; *Walling* v. *Miller*, 15 Cal. 38.) The testimony shows that this money advanced by the wife to her husband was not intended as a gift. (*Iowa City Bank* v. *Weber*, 72 Iowa, 137.) Where the wife is a *bona fide* creditor of the husband he may prefer her under the same regulations as he may prefer other creditors. (*Chapman* v. *Summerfield*, 36 Kan. 610; *Kennedy* v. *Powell*, 34 Kan. 22; *Whitford* v. *Daggett*, 84 Ill. 144; *Tomlinson* v. *Matthews*, 98 Ill. 182; *Jaycox* v. *Caldwell*, 51 N. Y. 395; Stewart on Husband and Wife, § 45.) The mere fact of the relationship between husband and wife raises no presumption of fraud.

(*Richardson* v. *Subers*, 82 Ga. 427; *Cornell* v. *Gibson*, 16 N. E. Rep. 130; *Hedge* v. *Glenny*, 39 N. W. Rep. 818; *Rockford etc. Mfg. Co.* v. *Mastin*, 39 N. W. Rep. 219.) The note of November 11, 1885, was admissible in evidence to prove an indebtedness due from the husband to the wife. (*Kleinschmidt* v. *Kleinschmidt*, 9 Mont. 477.) As to whether this assignment was fraudulent, the question of intent and knowledge thereof by the assignee is material, as well as the matter of consideration. The statute of frauds provides that the question of intent is one of fact, and not of law, and that no conveyance shall be adjudged fraudulent solely on account that it was not founded on a valuable consideration, nor where there has been a valuable consideration, unless the purchaser had previous notice of the fraudulent intent. (Comp. Stats., § 231, p. 653; § 232, p. 654.) The plaintiff in this action was not a creditor in this state at the time this assignment was made by the husband to the wife, and, therefore, cannot claim to have been hindered or delayed in the collection of her indebtedness by reason of this assignment. (*Brown* v. *Campbell*, 100 Cal. 635.)

DE WITT, J.—On March 3, 1887, the legislative assembly of the territory of Montana passed the following act: "That from and after the passage of this act women shall retain the same legal existence and legal personality after marriage as before marriage, and shall receive the same protection of all her rights as a woman which her husband does as a man; and for any injury sustained to her reputation, person, property, character, or any natural right, she shall have the same right to appeal in her own name alone to the courts of law or equity for redress and protection that her husband has to appeal in his own name alone." (Comp. Stats., div. 5, § 1439.)

As to that act this court said in the case of *Kelley* v. *Jefferis*, 13 Mont. 180, as follows: "This is a comprehensive provision, and commands the courts in this jurisdiction, where a united jurisprudence of equity and law is administered, to disregard the ancient doctrine of the common law on the question under consideration as a dead dogma, and enforce and protect the rights of married women unhampered thereby; and we think the effect

of this statute would be to so modify the prior act of 1872, above quoted, as to enable a married woman to hold her individual separate property as against her husband's creditors without having a list thereof on record, on showing the facts necessary to establish her individual title thereto."

The appellant contends that the loans made by Mary A. to Francis Patten, prior to March 3, 1887, cannot be held as enforceable from Francis to Mary, for the reason that she had not filed any list of separate property prior to 1887, and that those transactions took place prior to the passage of the act above referred to, and sometimes called the Married Woman's Emancipation Act. It is true that it does not appear in the case that this wife had filed any separate list. But we are of opinion that it is unnecessary to decide what her rights would be as to the loans made to her husband prior to 1887, for the reason that it appears by the record that the advances which she made to him after March 3, 1887, were more than sufficient to absorb the $600 due from Fraser & Ward, and which she claims as her own. As noted in the statement of facts, she pleads that in consideration of her assuming her husband's obligations to his partner and to the insurance companies, her said husband had agreed with her that said Fraser & Ward should turn over to her the entire purchase money of the insurance business. The transaction by which this $600 was turned over to her, or assigned to her, was on August 14, 1890, which was some time before the garnishment was served in the case of *Lambrecht* v. *Patten.* In pursuance to this agreement and assignment she paid out some $800 on her husband's account to the said insurance companies to settle his affairs with them, and this money she raised by a mortgage given upon her separate estate. The absolute and perfect justice of allowing this Fraser & Ward $600 to go to Mary A. Patten is made conspicuous by the fact that this very $600 came from the sale of the insurance business, and that her $800 advanced to her husband had gone to settle this very business which was so sold, and to enable the husband to make the sale. Therefore, under the views expressed in *Kelley* v. *Jefferis, supra,* Mary A. Patten need not have filed any separate list of this, her property, in order to protect it from the creditors of her husband.

The only other questions on this appeal are matters of fact as to the alleged fraud between the husband and wife. We have read this record carefully, and are of the opinion that the evidence establishes clearly and conclusively the absolute honesty of the debt claimed from Francis to Mary A. Patten. It is not fraud *per se* for a husband to pay to his wife a debt which he honestly owes her. And as we have remarked, fraud in fact was not shown in this case.

It was said in the case of *Chapman* v. *Summerfield*, 36 Kan. 610: "The relation existing between Edward and Sarah W. Chapman, being that of husband and wife, induces the court to scrutinize very closely their dealings with each other; but, when it is clearly established that there is an honest *bona fide* indebtedness by the husband to the wife, then their mutual transactions may be reviewed in the light of the trust and confidence incident to the marriage relation." (See, also, *Rockford etc. Mfg. Co.* v. *Mastin,* 75 Iowa, 112; *Gilbert* v. *Glenny,* 75 Iowa, 513; *Hoes* v. *Boyer,* 108 Ind. 494; *Jaycox* v. *Caldwell,* 51 N. Y. 395; *Tomlinson* v. *Matthews,* 98 Ill. 178.)

We cannot reiterate too strongly the language used in the Kansas case, which we have above quoted, that, in questions of payment by a husband to his wife of moneys alleged to be hers, a court cannot scrutinize too closely the relations between the persons and their conduct as to such moneys. That relation is often a convenient means for the perpetration of a fraud, and when claims of such indebtedness are made between husband and wife, they must be subjected to the most searching examination, if not indeed suspicion. But when the absolute *bona fides* is established, as it was in this case, beyond any question or cavil, then the fact that the honest creditor is the wife of the debtor cannot in itself be considered as conclusive evidence of fraud against the clear and positive evidence of good faith.

The judgment is affirmed.

*Affirmed.*

PEMBERTON, C. J., and HUNT, J., concur.