HOLTER ET AL., RESPONDENTS, *v.* WASSWEILER AND WIFE, APPELLANTS.

[Submitted January 29, 1897.   Decided February 8, 1897.]

*Fraudulent Conveyance—Husband and Wife—Laches.*

FRAUDULENT CONVEYANCES—*Husband and Wife.*—Under the preemption law defendant Ferdinand Wassweiler obtained patent to 160 acres of land, one-half of which he sold in 1873 for $10,000, of which one-half was paid to him at once, and the other half was subseq ently paid to the wife, who in September, 1883, turned it over to her husband; from defendants' testimony it further appears that they had an agreement between themselves that she was to have one-half of the purchase price of the land whenever the same was sold, and one-half of the profits of the business which they conducted on the premises. It further appears from defendants' testimony that, when Mrs. Wessweiler paid to her husband the money above mentioned, it was agreed between them that he should use the money in improvements upon the half of the premises not sold, and that he should, upon demand, convey to her that half of the real estate for her o n separate use, which he did in June, 1892, by a deed to one "T" who thereupon conveyed the premises to the wife. In 1887 the defendant Ferdinand Wassweiler gave to plaintiff his promissory note in payment of material, a part or all of which he had used in improvements on the premises subsequently conveyed to the wife, the title of he premises being in the husband of record and remaining in his name until June, 1892. *Held,* that by reason of the negligence and laches of the wife in allowing the title to stand in her husband's name and in allow-

ing him so to use the same and hold the title thereto as to induce others to believe that he owned the property, she could not in equity claim the premises freed from the lien of plaintiff's judgment.

*Appeal from District Court, Lewis and Clarke County. H. R. Buck, Judge.*

ACTION by A. M. Holter and M. M. Holter, co-partners as A. M. Holter and Bro., against Ferdinand J. Wassweiler and wife, to cancel ce.tain conveyances ' From a judgment for plaintiffs, defendants appeal.     Affirmed.

Statement of the case by the justice delivering the opinion.

The plaintiffs are co-partners, and the defendants husband and wife.     From the pleadings and record it appears that on the 26th day of September, 1887, the defendant Ferdinand J. Wassweiler executed to the plaintiffs his promissory note for the sum of $838.20, with interest thereon at the rate of 1 per cent. per month from date until paid; that said note was only paid in part; that on the 11th day of January, 1893, plaintiffs commenced a suit in the district court in and for the county of Lewis and Clarke, against said defendant Ferdinand J. Wassweiler, to recover the balance due and unpaid on said note, and on the 18th day of February, 1893, recovered judgment in said action against said defendant for the sum of $927.75 and costs; that an execution was thereafter issued out of said court on said judgment, and directed to the sheriff of said Lewis and Clarke county; and that thereafter said execution was returned by the sheriff wholly unsatisfied, on account of the sheriff's inability to find property belonging to said defendant in said county to satisfy the same.     It appears that, at the time of the execution of said note by said Ferdinand J. Wassweiler, he was the owner of certain real estate situated in Lewis and Clarke county, and fully described in the complaint; and it is alleged that on or about the 1st day of June, 1892, Ferdinand J. Wassweiler and his wife, Caroline C. Wassweiler, for the purpose and with intent of cheating and defrauding the plaintiffs out of the money due upon the claim

and judgment aforesaid, executed a certain conveyance, by which they pretended to convey to one H. S. Tullis the lands described in the complaint, for the alleged consideration of $4,000; and that thereafter said Tullis made and executed a certain instrument or conveyance to the defendant Caroline C. Wassweiler, for the same premises, for the alleged consideration of $4,000.   It is further alleged that there was no consideration for either of said conveyances, and that the same were executed for the purpose of conveying the title to the defendant Caroline C. Wassweiler, with intent and for the purpose of hindering, delaying, cheating, and defrauding the creditors of said Ferdinand J. Wassweiler, and especially these plaintiffs.   It is alleged that, notwithstanding said pretended conveyances, the said Ferdinand J. Wassweiler has always been the owner, and is now the owner of said real estate.   It is also alleged that said Ferdinand J. Wassweiler has no other property that can be reached by execution to satisfy said judgment.   Plaintiffs therefore ask judgment that the said pretended conveyances from defendants to said Tullis, and from said Tullis to the defendant Caroline C. Wassweiler, be declared fraudulent and void, and that the same be canceled, and that the premises described in the complaint be sold, and the proceeds thereof applied to the payment of plaintiffs' judgment, and that it be decreed that the said Caroline C. Wassweiler acquired no title by virtue of said pretended conveyance to her from Tullis.   The separate answers of defendants admit the execution of the note by said Ferdinand J. Wassweiler, the recovery of the judgment against him, as alleged in the complaint, and the issuance and return of the execution thereon.   The answers deny that Ferdinand J. Wassweiler was the owner of the real estate described in the complaint at the times mentioned therein.   The fraudulent intent with which it is charged said deeds mentioned in the complaint were executed is also denied.   It is admitted that there was no consideration passed to Tullis for the conveyance of the real estate by him to Caroline C. Wassweiler.   The answers set up affirmatively that the defendants have lived upon the land de-

scribed in the complaint, since 1883, as a homestead.   It appears from the record that the 80 acres of land described in the complaint are one-half of a tract of land acquired by the defendant Ferdinand J. Wassweiler under the pre-emption laws of the United States, on which defendants located and lived since 1865.   The other half of the tract of land was conveyed by the defendants to C. A. Broadwater about 1873 or 1874, for $10,000.   It further appears he paid one-half cash, and the remaining half some years later.   The alleged cash payment was made to the husband, Ferdinand J. Wassweiler, and he used the same.   The remaining half of the purchase price of said tract of land was paid by Broadwater to Caroline C. Wassweiler, and was deposited to her credit in the First National Bank of Helena.   It was to her credit there from November 3, 1882, to September, 1883, when she turned it over to her husband.   The testimony shows that the defendant Caroline C. Wassweiler turned this money over to her husband, with the understanding that he was to use the same for the purpose of constructing buildings and improvements on the 80 acres of land described in the complaint.   From the testimony of the defendants it appears that there was an agreement between them by 'which Caroline C. Wassweiler was to have one-half of the proceeds of the whole tract of land obtained by Wassweiler from the government whenever the same should be sold, and also one-half of the profits of the business which they were conducting on said premises. . It appears from their testimony that, when they sold one-half of the tract of land to Broadwater, the defendant Ferdinand J. Wassweiler took and used the cash payment of one-half of the purchase price, and that the deferred payment of the purchase price was paid to the defendant Caroline C. Wassweiler; and it also appears that, when Caroline C. Wassweiler paid over the money which was paid to her as her one-half of the purchase price of the land sold to Broadwater, it was with the aforesaid understanding that her husband, Ferdinand J. Wassweiler, should use the same for improving the 80 acres mentioned in the complaint, and that he should, when demanded, deed the

same to Caroline C. Wassweiler, to be held and owned by her
as her own separate property.   It seems from the evidence of
the defendants that Ferdinand J. Wassweiler's agreement to
deed said premises mentioned in the complaint was not com-
plied with until the date of the deeds, as shown above.   The
case was tried to the court, without a jury.   The court found
the issues in favor of plaintiffs, and rendered judgment against
the defendants in accordance with the prayer of the complaint.
From the judgment and order overruling defendants' motion
for a new trial, this appeal is prosecuted.

*T. J. Walsh*, for Appellants.

*Walsh & Newman*, for Respondents.

PEMBERTON, C. J.—In his brief, counsel for appellants
says :   "It appears to have been contended at the trial that
the money which Mrs. Wassweiler let Mr. Wassweiler have
was his anyway, and that the alleged agreements were void by
reason of the relationship between them, the transaction hav-
ing occurred prior to the passage of the married woman's
emancipation act.   In this view the court concurred, and
placed its ruling substantially on this ground.   The case stands
for determination on the correctness of this contention, and it
is respectfully submitted that, as a legal proposition, it cannot
be sustained.   It is unnecessary to rely on the agreement testi-
fied to by both of the defendants, that from the first it was
agreed between them that the real estate they were acquiring
should be held and enjoyed jointly.   When it came to a sale
of the tract to Broadwater, she had valuable rights in it, which
she was not obliged to surrender except on her own terms.   *
* *  She had a dower interest in it, at all events, and a
homestead right.   A conveyance by her husband without her
concurrence would have been absolutely void.   She had a per-
fect right to refuse to join in the conveyance unless her half
were paid or secured to her.   It was paid to her, and took the
form of certificates of deposit,—choses in action.   These were
hers, absolutely.   Unless they were reduced to his possession

during his lifetime, they passed to her heirs, not to his. And he was powerless to obtain them except upon making her an adequate settlement out of his estate. Although the common law considered him the owner of the securities, this was a dogma so repugnant to the court of chancery that it devised a scheme of trusteeship for the wife in a third person for the manifest purpose of avoiding its effect. As the husband could not sue the wife at common law, he was powerless to get her choses unless he resorted to the court of chancery, before which the law was considered unconscionable; and that tribunal would refuse to compel the wife to surrender unless the husband created a trusteeship in her behalf, and thus made her an adequate settlement out of his own estate. ''

In support of the above argument, counsel cites 1 Daniell on Ch. Prac., p. 90 *et seq.*, and authorities cited in notes. Counsel also contends that, even if it be admitted that the agreements relied on between the defendants were made when the common-law rule in relation to the rights of married women was in force in this state, still, he says ''the husband could not have possessed himself of these assets except he did substantially what he did afterwards, and that of which the plaintiff complains. In view of the expressions found in the foregoing authorities and the general rules governing the action of the court of chancery, there is no doubt that, if the husband obtained the wife's choses upon an agreement to convey to her a portion of his real estate, equity would either compel him to do so, or to restore the property he got, or make some other adequate provision for her. Indeed, however he obtained them, she could maintain a bill against him to compel a settlement, even after his assignment for the benefit of creditors, or the institution of bankruptcy proceedings, or in a suit by his assignee not *bona fide* or for a valuable consideration,''—and cites the following authorities in support of his contention : Pomeroy's Equity Jur., § 1114; *Beal's Ex'r* v. *Storm*, 26 N. J. Eq. 372; *Sykes* v. *Chadwick*, 18 Wall. 141. In support of the contention of counsel for appellants that the release of her dower rights in the real estate mentioned in the complaint

was a sufficient consideration to support the claim of the wife to an enforcement of the agreements between the defendants in a court of equity, he cites 1 Am. Lead. Cas. 65, 66; *Hershy* v. *Latham*, 46 Ark. 542, and authorities cited; *Garner* v. *Bank*, 151 U. S. 420, 14 Sup. Ct. 390; *Lambrecht* v. *Patten*, 15 Mont. 260, 38 Pac. 1063. In view of the foregoing authorities, counsel for appellants contends that the agreement between the husband and wife shown in the evidence is valid, and supported by a sufficient consideration, and is enforceable in equity against the husband, as well as against his creditors or assignees. Counsel for appellants also says : "It is undoubtedly true that if the wife had done anything to induce the belief that the premises in question were the absolute property of the husband, and that she had no claims against it, and the debt had been contracted upon the faith of his ownership of it, or upon a credit induced by his apparent ownership, some question might possibly arise; but it is sufficient to say that no such case is made, either by the pleadings or the proof, and the law is now well settled that a wife may be preferred upon a *bona fide* obligation as well as any other creditor, and is under no more obligation to publish her claims than any other creditor." Appellants' counsel also says that the equitable doctrine contended for here was entirely overlooked by the court below.

Now, then, let us admit that the agreement relied upon by the appellants is valid as between themselves, and one which a court of equity would enforce as between themselves, and, under ordinary circumstances, against the creditors and assignees of the husband; still, are the facts and circumstances of this case such as would authorize the enforcement of the agreement by a court of equity in favor of the wife, as against the rights of the plaintiffs? In the language of counsel for the appellants, does the evidence show that the wife has "done anything to induce the belief that the premises in question were the absolute property of the husband, and that she had no claims against it," or that "the debt had been contracted upon the faith of his ownership of it, or upon a credit

induced by his apparent ownership?" The evidence shows that the title to the whole tract of land acquired by the husband from the government remained of record in his name until the sale of one-half thereof to Broadwater, in 1873 or, 1874, and that thereafter the title to the 80 acres in controversy remained in the name of the husband until 1892, when it was conveyed to Tullis, and by Tullis to the wife. This was nine years after the wife turned over the $5,000 paid to her by Broadwater, as her part of the purchase price of the land sold to him by appellants, to her husband, for the purpose of improving the land in controversy. This was nine years after the agreement was made by the husband to deed the land in controversy to the wife. For nine years the wife permitted the land in controversy to stand on the records in the name of the husband after he had agreed to convey it to her. Who can say that the wife did not thereby "induce the belief" in the minds of the plaintiffs, as well as of the public, "that the premises in question were the absolute property of the husband, and that she had no claims against it," and that, in this case the debt had not "been contracted upon the faith of his ownership, or upon credit induced by his apparent ownership?" The wife in this case also authorized her husband to use the money she let him have to improve the premises in controversy. As shown by the wife's own testimony, her husband was authorized to improve the premises in controversy. She let him have her money for that purpose. If he went in debt in making these improvements, and did not limit himself to such improvements as he could or did pay for with her money, he was still her representative. She had placed him in a position or, at least, permitted him to occupy a position, where he could impose on those with whom he was dealing in improving the premises. We think, from the evidence, that a very considerable part of the husband's indebtedness, if not all, to the plaintiffs, was incurred for hardware and lumber which went into the buildings and improvements placed on the premises by the husband. If this be not so, it was incumbent on the appellants to show it before the wife.

could equitably ask to be permitted to hold the premises free from the incumbrance of plaintiffs' judgment for a debt incurred under the circumstances of this case.   If the wife in this case would claim the land in controversy as her own under the agreement in relation thereto made with her husband, she should, at least, take it subject to the incumbrances which have been placed upon it through her own negligence and laches,—negligence and laches which were calculated to mislead those dealing with her representative.   If she would have equity, she must do equity.

We are unable to determine how much the value of these premises has been enhanced by the building materials for which the husband's indebtedness was incurred to plaintiffs. But, however much the value thereof has been thus increased, we do not think it equitable that the wife should, under the circumstances, take the land in controversy freed from the judgment lien of the plaintiffs, and that, until she has discharged this lien, she has no standing in a court of equity. Respondents' objections to this court hearing this appeal, involving questions of practice, become immaterial under the foregoing treatment of the case.   The judgment and order appealed from are affirmed.

*Affirmed.*

HUNT, J., concurs.   BUCK, J., disqualified.