## DANIEL B. CAPRON *vs*. ISAAC PORTER.

The purchaser of a stock of goods in a store disposed of a part of the goods and with the proceeds purchased and placed in the store other and similar goods. A creditor of the vendor, claiming the sale to be constructively fraudulent, attached as the property of the vendor both the original and the newly purchased goods. Held that the constructively fraudulent character of the original sale did not affect the title of the purchaser to the newly purchased goods.

It would have been different if the original sale had been fraudulent in fact.

The newly purchased goods were mingled, though not inseparably, with the original goods. Held that this did not render them liable to attachment with the original goods.

If they had been mingled inseparably, it would not have affected the title of the purchaser to the newly purchased goods, unless he had intermingled them fraudulently and with intent to prevent an attachment of the other goods.

TROVER, for sundry goods; brought to the Court of Common Pleas in Hartford County, and tried to the jury before *McManus, J.* The plea was the general issue, with notice that the defendant took the goods by attachment as a deputy sheriff, as the property of one Richmond, upon a writ against him in favor of one Cummings, a creditor of Richmond.

On the trial the plaintiff offered evidence to prove, and claimed to have proved, that on the 18th day of May, 1874, he purchased of Richmond, for a valuable consideration, a stock of goods, then belonging to Richmond, and in a store in New Britain, and that he then took the same into his possession; and that he afterwards purchased at different times, and from different parties, other and similar goods, and added the same to the stock, and that he continued to possess the original and newly purchased goods, and did business therewith at the store, until the 13th day of June, 1874, when the defendant entered the store, and forcibly removed therefrom a large quantity of goods, in part consisting of original goods sold by Richmond to the plaintiff, and in part of goods so added by later purchases.

The plaintiff offered evidence to prove, and claimed to have proved, that the purchase from Richmond was made *bonâ fide;* and that he at once took open possession of the same, and so continued down to the acts of the defendant complained of; and that the goods subsequently purchased by him and added to the stock were paid for by him from his individual funds.

The defendant offered evidence to prove, and claimed to have proved, that he was a deputy sheriff, and took the goods by virtue of a writ of attachment brought by one Cummings against Richmond to recover a debt due before and at the time of the conveyance of the stock of goods by Richmond to

the plaintiff; that that conveyance was fraudulent in fact, and was also fraudulent in law, because Richmond was allowed to remain in possession and exercise control over the store and goods, and the additions thereto, after the sale, and down to the time of the attachment by the defendant, in the same way as before the sale; and that if any goods were bought by the plaintiff of parties other than Richmond and added to the stock, they were paid for by the plaintiff from the proceeds of the original goods.

It was admitted that proper demand had been made by the plaintiff upon the defendant for the goods.

Upon the evidence and claims of the respective parties it became material for the jury to distinguish between the property bought of Richmond and the property purchased subsequently of other parties.

The plaintiff requested the court to charge the jury, that if they should find that the sale was fraudulent and void as against attaching creditors on the ground that there was no change of possession, and that subsequently the plaintiff bought other goods of parties other than Richmond, and the defendant took some of the latter goods and converted them to his own use, he was liable to the plaintiff for the value thereof, and that the infirmity of the plaintiff's title, if any there was, to the goods bought of Richmond, by reason of a want of change of possession, did not extend over to or affect the title of the plaintiff to the goods subsequently bought; and that this was so even if the last named goods were bought with the proceeds of the sale of the goods bought of Richmond.

The court charged the jury upon this point as follows: that if they should find that the conveyance of the store and stock of goods from Richmond to the plaintiff, was fraudulent and void in fact, or was fraudulent in law and void as against a *bonâ fide* attaching creditor of Richmond by reason of a retention of possession by the vendor, and that they should also find that the defendant had taken goods from the store that had been purchased subsequent to the sale in question and from other parties than Richmond, then the plaintiff, to

entitle himself to recover for such last mentioned goods, must have satisfied the jury that the same had been purchased by him with means other than the proceeds of such fraudulent and void conveyance; but did not otherwise charge as requested.

The jury having returned a verdict for the defendant, the plaintiff moved for a new trial for error in the charge of the court.

*F. L. Hungerford,* in support of the motion.

1. The reasons upon which the rule that retention of possession is evidence of fraud is based, have no application to other property purchased by the vendee and allowed by him to remain in possession of the vendor; and whether the new property is obtained by exchange or whether it is paid for with one kind of funds or another, can make no difference. As to such property there is no *retention* of possession. The charge made no distinction between a sale fraudulent in fact, and one fraudulent in law only.

2. The earlier decisions in this state held that retention of possession was presumptive evidence of fraud, but that the presumption would yield to evidence. Now it is held, practically, that retention of possession is conclusive evidence of fraud and cannot be explained. In this we are in advance of most other states. The court is now asked to take another step and hold that retention of possession of property sold for full value, not only imperils that property, but all other property bought with the proceeds of its sale. It is submitted that public policy, upon which our present rule is founded, does not require such an extraordinary penalty for an act not tainted with any moral fraud. The court has already broadly intimated that it was not prepared to lay down such a doctrine. *Norton* v. *Doolittle;* 32 Conn., 405; *Lucas* v. *Birdsey,* 41 id., 357.

3. The charge was further objectionable in putting upon the plaintiff, instead of the defendant, the burden of proving that the additional goods were purchased with means other than the proceeds of the sale alleged to be fraudulent. The

burden was on the defendant to select the goods which belonged to Richmond. *Treat* v. *Barber*, 7 Conn., 274; *Smith* v. *Sanborn*, 6 Gray, 134; *Morrell* v. *Keyes*, 14 Allen, 224. The burden of proof was on the defendant to prove all the facts which were necessary to justify the taking. *Treat* v. *Barber*, 7 Conn., 274.

*H. H. Barbour, Jr.*, with whom was *M. E. Merrill*, contra.

1. That retention of possession by the vendor is conclusive evidence of a fraudulent and void sale, is now a well established principle. *Bird* v. *Andrews*, 40 Conn., 542; *Hatstat* v. *Blakeslee*, 41 id., 302.

2. The instructions of the judge to the jury did not go beyond this principle, but carried it to its logical conclusion. The jury were told that if a sale is fraudulent in fact, or fraudulent in law because of retention of possession by the vendor, then articles in his possession, bought with the proceeds of that fraudulent sale, are liable to attachment as his property. The judge did not say that the fact that the vendor has articles so bought in his possession is evidence of a colorable conveyance. The sale being void the vendee obtains no right or title to the property, the use, profits and proceeds thereof belonging still to the vendor. Or, in the words of the court in the case of *Chenery* v. *Palmer*, 6 Cal., 122, "the law from motives of public policy having declared the contract void, all subsequent acts under it must relate to its inception, and are alike tainted with fraud." In *Owen* v. *Dixon*, 17 Conn., 498, STORRS, J., says: "The rights of the creditor with respect to the property are not affected by such conveyance, but he may avail himself of all the remedies for collecting his debt out of the property *or its avails.*"

2. The burden of proof in reference to the articles claimed to have been subsequently bought and mingled with the goods of the fraudulent sale, was correctly placed upon the plaintiff by the court, because—1st. Fraud, which is in its nature continuous, having been shown in the transactions upon which the plaintiff relied to prove his case, is presumed to exist until the contrary is shown. *Farr* v. *Payne*, 40 Verm.,

615; *Eames* v. *Eames*, 41 N. Hamp., 177.   2d. And because the plaintiff being in possession of means to disprove that the proceeds of the void sale paid for the goods, and such proof not being within the control of the defendant, the law will presume that such is not the fact unless the evidence to establish it is adduced.   *Great Western R. R. Co.* v. *Bacon*, 30 Ill., 347.

LOOMIS, J.   The plaintiff on the 18th day of May, 1874, for a valuable consideration, bought of one Richmond a stock of goods situated in a store previously kept by the latter; and the plaintiff afterwards purchased of other parties than Richmond, in other places, additional goods, and put them into the same store.   The additional goods were in part purchased with money furnished directly by the plaintiff, and in part with money obtained by him from the avails of the sale of some of the original goods purchased of Richmond.   The defendant afterwards, on the 13th day of June, 1874, as deputy sheriff, by virtue of a writ of attachment in favor of one Cummings and against Richmond, took, as the property of the latter, not only a portion of the original goods, but also the additional goods purchased by the plaintiff of other parties, and claimed to hold them upon the ground that the sale was fraudulent in law as against an attaching creditor because Richmond was allowed by the plaintiff to remain in possession and exercise control over the store and goods after the original sale; and that the infirmity of the plaintiff's title, by reason of such retention, extended to all the goods subsequently purchased of other parties with the proceeds of the sale of the original goods.   The court charged the jury in this respect in accordance with the defendant's claim, and against the contrary claim of the plaintiff.   The correctness of this ruling is the question now under consideration.

That the retention of the possession of personal property by the vendor after a sale raises a presumption of fraud which cannot be repelled by any evidence that the transaction was *bonâ fide* and for valuable consideration, is still adhered to and enforced by the courts in this state with

undiminished rigor, as a most important rule of public policy. The reason of the rule is, that as against a person who was once the owner of the property and all who claim by purchase from him, the continued possession is to be regarded as a sure indicium of continued ownership, and that the possessor would obtain by such continued possession a false credit to the injury of third persons if there was no such rule to protect them. But the possession of property never owned by the possessor raises no such presumption. Any one can safely put his personal property in another's possession or give another the use of it without imperiling his title. The additional goods purchased after the original sale are neither within the terms nor the reason of the rule referred to. Richmond as to these goods was never a vendor, and of course there was never any retention of the possession by him after the sale.

If the original transaction had been tainted with actual fraud, the avails of such fraud would have been likewise tainted and exposed to the just demands of creditors; but no such remote effect can be given to mere constructive fraud. The case we are considering is quite analogous in principle to the recent case of *Lucas* v. *Birdsey*, 41 Conn., 357, and is virtually decided by that case. In that case a son owned a horse and sold it to his father, the plaintiff. The son retained possession after the sale and as agent for his father exchanged it for another horse, and took into his possession also the horse so received in exchange. After the exchange the father agreed to sell the horse to his son for a certain price, but no title was to vest in the son until the price was paid. While the son held the horse and before the price was paid, it was attached as the property of the son, but the court decided that it could not be so taken. PHELPS, J., in giving the opinion says: " If the first horse had been attached in his (the son's) hands after the sale to the father and after a reasonable time for him to have taken possession had elapsed, or if the second horse had been attached as the property of the father after the exchange and before the payment of the agreed price, the attaching

creditor would thereby have obtained a valid lien; but we are not prepared to hold that, because the retention by the vendor under the sale of the first horse would have been held conclusive evidence of a colorable sale, the possession by him of the second after such exchange and the subsequent purchase by him, would consequently have that effect. As a conditional vendee he had before performance no title, and therefore no attachable interest, and we do not see that he can justly be regarded as a vendor improperly retaining possession of the second horse on the ground that he was the original owner and vendor of the first and retained possession of that until the exchange for the second and his purchase of it were made."

But it was suggested in the argument that the plaintiff allowed the additional goods to be intermingled with the original and similar goods, the sale of which was constructively fraudulent, and for that reason the additional goods should be subjected to the same rule as to their fraudulent character. This principle however cannot apply to such a case as this. It is not shown that there is any difficulty in distinguishing between the original goods and those subsequently purchased. Indeed the motion assumes that the jury might so distinguish them, and the nature of the articles in question renders it possible to do so.

This was no case of the confusion of goods, as where the mixture of liquids or other substances makes one undistinguishable mass; but consisted merely in placing in the same store, perhaps on the same shelf or counter, such things as trunks, traveling bags and robes, by the side of similar articles.

There is also another well defined distinction which is well set forth in the case of *Treat* v. *Barber*, 7 Conn., 274, which will prevent the defendant from availing himself of the benefit of the principle invoked in his behalf. The marginal note of the case cited is as follows: "If *A* intermingles his goods with those of *B* without confusion, in such a manner that *A* alone can distinguish them, and an attaching creditor of *B* requests *A* to select his goods, which he refuses to do,

this alone will not justify such creditor in taking $A$'s goods with those of $B$. But if $A$ fraudulently, and with the intention of frustrating the attachment of $B$'s creditor, intermingle his goods with those of $B$, so as to be inseparable by such creditor, the latter may justify the taking of them."

In the present case it is not even suggested that any fraudulent or wrongful purpose existed in the mind of the plaintiff, or even that the intermingling made the goods inseparable.

In *Smith* v. *Sanborn*, 6 Gray, 134, Merrick, J., in giving the opinion of the court, says: "A change of ownership does not necessarily ensue from the mere intermixture of property belonging to different individuals." * * * * "It is only in those cases where the intermixture has been caused by the willful or unlawful act of one of the proprietors, and the several parcels have thereby become so combined or mingled together that they can no longer be indentified, that his interest in them is lost."

A new trial is advised.

In this opinion the other judges concurred.