FINCH et al., Respondents, *v.* KENT et ux., APPELLANTS.

[No. 1,238.]

[Submitted April 26, 1900. Decided July 2, 1900.]

*Creditors' Suit — Pleading — Fraud — Issues and Proof — Fraudulent Sales — Change of Possession — Liability of Purchaser — Evidence — Possession of Third Party — Ownership — Proof — General Reputation — Copy of Bill of Sale — Admissibility — Transfer of Property — Intention of Parties — Debt — Judgment — Trial by Jury — Statute of Limitations — Transcripts — Briefs.*

1. Where a creditors' bill to set aside a sale as fraudulent averred that the sale was made with the actual intent to defraud the creditors of the vendor, the burden of proof is on the plaintiff to show facts which will invalidate the sale.

2. Where a creditors' bill to set aside a sale as fraudulent averred that the sale was made with the actual intent to defraud the creditors of the vendor, a finding of constructive fraud, based on the fact that there was no continued change of possession after the sale, is not sufficient to support a judgment for the plaintiff, since he cannot plead actual fraud and recover on proof of constructive fraud.

3. Where plaintiff in a creditors' suit pleaded actual fraud in a sale by a husband to his wife, and introduced evidence of constructive fraud, in that there was no change of possession of the property, the fact that defendants did not object to the introduction of such evidence did not constitute a waiver of their right to raise the question that the proof was not responsive to the pleadings.

4. Comp. St. 1887, div. 5, sec. 226, provides that every sale of chattels by a vendor in his possession or under his control, not accompanied by immediate delivery and followed by an actual and continued change of possession of the thing sold, shall be conclusive evidence of fraud, as against the creditors of the vendor. *Held*, in a creditors' suit to set aside a sale of sheep as fraudulent because there was no continued change of possession, where only a part of them remained in the possession of the purchaser at the time the creditors secured their lien, a judgment that the purchaser should deliver to the sheriff, for the benefit of the creditors, all the sheep purchased, or account for their proceeds, was erroneous, since the purchaser was liable, under the statute, only for the identical chattels, remaining in his possession at the time the creditors' lien attached.

5. In a creditors' suit to set aside a sale as fraudulent, the judgment roll in another suit is not admissible to show that the title to the property was undetermined, where such record does not disclose that it concerns any party to the present action.

6. On the issue whether a sale of property was fraudulent as to creditors of the vendor, the plaintiff having introduced evidence that there was no continued change of possession after the sale, for the purpose of showing constructive fraud, it was competent for the defendant to show in rebuttal that a third person had possession of the property after the sale.

7. Where an execution was returned nulla bona, and in proceedings supplemental to execution the defendant was examined as to his property, his testimony so given was competent against him in a subsequent creditors' suit to set aside a sale of his property as fraudulent.

8. In a creditors' suit to set aside a sale by the husband to his wife as fraudulent, a transcript of a bill of sale of the property from the husband to the wife, filed in the county recorder's office, is admissible in evidence for the purpose of showing the nature of the transfer, where the original was shown to have been lost.

9. In a creditors' suit to set aside a sale of sheep by a husband to his wife as fraudulent, both the husband and wife may testify that the transfer was not made with the intention of defrauding any creditors, since their intention was material to the issue.

10. In a creditors' suit to set aside a sale of property made on January 3, 1893, as in fraud of a judgment obtained by the vendor's creditors against him on February 17, 1894, evidence that defendant did not owe plaintiff anything at the time of the sale was relevant.

11. In a creditors' suit to set aside a sale of property made on January 3, 1893, as in fraud of a judgment obtained by the creditors against the defendant on February 17, 1894, evidence of the defendant that he did not owe the amount of the judgment is properly excluded, since the judgment was conclusive evidence of his liability, in the absence of evidence on his behalf tending to show fraud, accident, mistake or satisfaction.

12. In a creditors' suit to set aside a sale of 3,400 sheep by a husband to his wife as fraudulent, evidence that the wife was generally reputed in the neighborhood where they resided to be the owner of the sheep was incompetent as hearsay. (The rule of evidence laid down in *Griswold* v. *Bole*, 1 Mont., 515, disapproved.)

13. Under Const. Art. 3, Sec. 23, providing that the right of trial by jury shall be secured to all, and shall remain inviolate, the direction of a verdict in a creditors' suit to set aside a sale as fraudulent was not an infringement on the defendant's right to a trial by jury, though the testimony in the case was conflicting, since such cases were within the exclusive jurisdiction of chancery at the time the constitution was adopted, and the constitution did not enlarge the right of trial by jury.

14. Under Comp. St. 1887, div. 1, sec. 42, subd. 4, providing that an action for relief on the ground of fraud shall be commenced within two years, where an action to set aside a sale of property as in fraud of a judgment against the seller was commenced in the year after the rendition of the judgment, it was not barred by limitations, since the right of action did not accrue until plaintiff's judgment was obtained.

15. Parties whose duty it is to prepare transcripts and briefs should exercise care and diligence in the preparation thereof and not file slovenly prepared ones.

*Appeal from the District Court, Yellowstone County; C. H. Loud, Judge.*

Action by George R. Finch and others against Thomas Kent and wife. From a judgment in favor of plaintiffs, and from an order denying a new trial, defendants appeal. Reversed.

*Mr. Gib. A. Lane*, for Appellants.

*Messrs. Campbell & Stark*, for Respondents.

(Sumitted on briefs, without oral argument.)

**MR. JUSTICE PIGOTT** delivered the opinion of the Court.

This action, in the nature of a creditors' bill, was brought to set aside, as fraudulent and void, a sale of 3,400 sheep made by the defendant Thomas Kent to the defendant Mary Kent on the 3d day of January, 1893.

The complaint states that on the 3d day of January, 1893, the defendant Thomas Kent, being then the owner of the sheep, sold them to his wife, the defendant Mary Kent; that the sale was fraudulent, without any consideration, and void as against the plaintiffs and the other creditors of Thomas, and was made for the purpose of hindering, delaying and defrauding his creditors; that the defendant Mary Kent, for the sole and only purpose of assisting Thomas in his intent to hinder, delay and defraud, took the sheep at that time, and has ever since pretended to be the owner thereof, but that she holds title to the sheep in trust for Thomas, the real owner; that the defendant Thomas has no property, other than these sheep, which is subject to the levy of an execution; that on the 17th day of February, 1894, the plaintiffs recovered a judgment against the defendant Thomas for $1000, with interests and costs, upon which they subsequently caused a writ of execution to be issued to the sheriff of the county of Yellowstone, where the defendants reside and the sheep were situate, which execution was duly returned, with the sheriff's certificate thereon to the effect that he had been unable to find any property of the defendant therein subject to the writ; that thereafter proceedings supplemental to execution were had, under which the defendant Thomas was examined, and the judge of the court, by order, authorized the plaintiffs to bring an action to subject to the satisfaction of their judgment the interest of the defendant Thomas in the sheep transferred by him to his wife.

The answer contains denials of the allegations of fraud, and sets up affirmatively that the 3,400 head of sheep were on the 12th day of January, 1893, by the sheriff of Yellowstone county, levied upon under an execution issued on a judgment in favor of a certain bank against one John Tinkler, and that thereafter one Sweetman, as bailee, replevied them from the sheriff, one Ramsey; that the action of Sweetman against Ramsey was determined in favor of the defendant therein, and that the cause is now pending on appeal in the supreme court of Montana; defendants pleaded, also, that the remedy of the plaintiffs was barred by subdivision 4 of section 42 of the First

Division of the Compiled Statutes of 1887.   By reply, the affirmative matters of the answer were denied.

Upon the trial the plaintiffs moved the court to direct a verdict for the plaintiffs, and to enter its decree setting aside the transfer of the 3,400 sheep, and requiring Mary Kent to account to the sheriff for the proceeds of the sale, or to deliver the sheep over to the sheriff, to be sold on execution to satisfy the judgment against Thomas Kent, for the reason that it conclusively appeared that there was no actual or continued change of possession of the property after the making of the bill of sale, and that Thomas Kent continued in the possession and control thereof.   The court granted the motion, and the jury, under the direction of the court, returned their verdict that the sale was made for the purpose of defrauding the plaintiffs and other creditors of Thomas Kent, and was void.   The court thereupon found, as a conclusion of law, (1) that the sale of the 3,400 sheep by Thomas Kent to Mary Kent was fraudulent and void and made for the purpose of defrauding the plaintiffs and other creditors of Thomas Kent; and, as a conclusion of fact, (2) that there was never any change of possession of the sheep, and that Kent had continued in the possession of them ever since the time of the sale.   A judgment was thereupon entered to the effect that Mary Kent deliver to the sheriff of Yellowstone county the 3,400 head of sheep alleged to have been sold to her, or that she account to him for the proceeds of the sheep, or of so much thereof as may be necessary to satisfy the demands of the plaintiffs.   From the judgment and from an order denying a new trial, the defendants have appealed.

In the absence of an attack thereon by demurrer, by objection to the introduction of evidence, or otherwise, we shall, for the purposes of the appeal, treat the complaint as stating facts sufficient to constitute a cause of action.

1. The complaint charges that the sale or transfer by Thomas Kent to Mary Kent was made with the actual intent to defraud the creditors of the seller, and that the purchaser entertained the like intent.   The court

found fraud in fact, and also fraud in law, or constructive fraud, basing its judgment upon both these findings. We think that the defendants have inferentially presented the contention that the finding in respect of constructive fraud, arising out of want of an actual and continued change of possession, is without the issues joined. True, the continued possession of the seller is some evidence tending to prove actual fraud in the sale, but, unless it be alleged, a judgment overturning the sale on the ground of such constructive fraud only is erroneous. Where the purchaser sues to recover chattels sold to him by a debtor, and siezed as the property of the debtor while in the latter's possession, an answer denying the title of the purchaser and justifying under the writ is sufficient to raise the question of whether there was actual fraud, as well as the question of whether there was constructive fraud, in the sale, for in such a case the burden is upon the plaintiff to establish his title to the property, and, in order to prove his ownership and the consequent right to recover, he must show a sale valid as against the creditor. Under these circumstances the burden is upon the plaintiff purchaser to prove that the sale was accomplished by an immediate delivery, and followed by an actual and continued change of possession, such as will satisfy the requirements of the statute. A. sues B. to recover chattels or their value, alleging title in himself; B.'s answer denies A.'s title, and justifies under a writ of execution issued on a judgment for money rendered against C., whose property he asserts the chattels to be. As soon as it appears upon trial that B. took the property from the possession of C., the presumption arises that C. was then the owner, and A., to prevail must overcome the presumption. If he bought the chattels from C., who at the time of the sale was in possession or control, he must establish the immediate, actual and continued change of possession contemplated by the statute, else, the sale is void as to B., who siezed the chattels under the writ and a valid judgment. If, however, the chattels were levied upon in A.'s possession, he may in the first instance safely rely upon the *prima facie* presumption of ownership arising from

possession, and the necessity of introducing evidence tending
to show a purchase by him from C. in actual or constructive
fraud of B. is upon the latter.    The necessity of adducing
evidence respecting ownership may, during the progress
of the trial, shift from one party to the other; the onus of
establishing the evidentiary or intermediate facts often shifts
to B.,—as, for example, when he would prove actual fraud
vitiating as to him the sale by C. to A., or when the property
is, on execution, taken from A., who purchased from C.  But
the burden of proving the ultimate fact, namely, a title in A.
which is valid as to B., remains upon A. throughout.  He has
asserted title; the wrong alleged is invasion by B. of the rights
flowing from, and dependent upon, ownership; title is denied
by B.; unless title be shown to be in A., he fails to prove a
cause of action.    A sale or transfer in fraud of B. is void as to
him; so far as he is concerned, the situation is the same as if
the sale or transfer had not been made.    Proof of either act-
ual or constructive fraud on creditors is, as to the demand of
B., fatal to the title of A., or, rather, establishes conclusively
that A. did not acquire a title which can be maintained against
B.    The burden is upon the plaintiff, A., and, if no evidence
were received, B., the creditor, having denied A.'s allegation
of ownership, would prevail.    But a different rule, founded
upon other principles, applies to a case like the one at bar, in
which, if no evidence were received, the defendants would be
entitled to judgment.    Here the plaintiffs aver that a sale was
made by Thomas Kent to Mary Kent, and seek to have it set
aside and declared void.  It becomes necessary, therefore, for
the plaintiffs to allege and to prove the facts which invalidated
the transaction.    It is incumbent upon them to point out the
particulars which render the sale void as to them, and the evi-
dence is to be restricted to proof of these allegations.    If the
vice which renders the sale null as to them was the existence
of actual fraud, the complaint must, as the complaint in this
case does, charge its presence.    If the vice was constructive
fraud, then it is incumbent upon the plaintiffs to state the
matters which constitute that cause of action.  Of course, both

actual and constructive fraud may be pleaded in the same complaint, but if actual fraud only be set up, then, although proof of constructive fraud may be evidence, having a tendency to support the allegation of actual fraud, yet the finding of constructive fraud is not of itself sufficient to support a judgment, for the allegations and proofs must correspond. Evidence tending to show want of change of possession may be introduced upon the issue of a personal intent to defraud. Such evidence is not obnoxious to the objection of incompetency or of irrelevancy, and therefore its reception without objection would not be deemed a waiver by the defendants of their right to insist that the judgment shall be based upon the questions presented by the pleadings; in other words, by the admission of such evidence without objection, the defendants are not to be considered as having consented to a trial of the issue of constructive fraud. When a cause is tried upon the theory, adopted by the losing party, that a certain question not presented by the pleadings was in issue, and the issue is decided, the judgment will not be reversed for that reason; it does not appear, however, in the case at bar, that the evidence touching the want of a continued possession in the purchaser was adduced for any purpose except as tending to prove fraud in fact, and the defendants do not seem to have had their attention directed to its bearing upon constructive fraud (the existence of which was not suggested by the pleadings) until the motion was made upon that ground for judgment, which was granted without hearing argument, the defendants excepting. The finding of constructive fraud is not responsive to the issues. The judgment, therefore, in so far as it is based upon the existence of mere constructive fraud is erroneous. Had constructive fraud been pleaded, the judgment, if based upon that ground, would be incorrect, in so far as it requires Mary Kent to deliver to the sheriff the 3,400 head of sheep, or that she account to him for the proceeds of the sheep, or of so much thereof as may be necessary to satisfy the demands of the plaintiffs, for the reason that the evidence falls short of proving that there remained in her possession or under her control sheep to the

number stated. The evidence shows only that she still had some of these sheep. and the well-recognized rule is that the subject of a sale constructively fraudulent because of a want of a change of possession may be siezed by a creditor,—the property itself may be taken,—but that the purchaser at such a sale is not liable for its proceeds, nor for the property taken in exchange for the property sold, provided the proceeds arise or the exchange be effected before the creditor obtains a lien; as to the proceeds or the property taken in exchange, the seller did not have possession or control, nor was either obtained or purchased from him. ( *Weeks* v. *Prescott*, 53 Vt. 57; *Capron* v. *Porter*, 43 Conn. 383.) Hence the declaration in section 226 of the Fifth Division of the Compiled Statutes of 1887 that every sale made by a vendor of chattels in his possession or under his control, unless it be accompanied by the immediate delivery, and followed by an actual and continued change of possession, of the thing sold, shall be conclusive evidence of fraud, as against the creditors of the vendor, cannot be successfuly envoked as against the purchaser guilty of constructive fraud only, so as to reach any property other than the identical chattels transferred, unless the chattels have been converted or exchanged after the creditors have secured a lien.

As we have seen, under the pleadings, no issue was raised of fraud in law, as contradistinquished from fraud in fact; nor did the trial proceed, so far as the defendants were concerned, upon the theory that such question was before the court. The suggestion of the plaintiffs that the judgment must be sustained upon the ground that the evidence tended to show constructive fraud, even though there may have been errors committed in the exclusion of evidence offered by the defendants with respect to the existence of actual fraud, cannot be adopted.

Having eliminated the matter of constructive fraud as a substantive cause of action, we proceed to ascertain whether the court erred to the prejudice of the defendants, restricting the inquiry to the rulings of the court made in the investigation of the question of the actual fraud alleged in the complaint.

2. The defendants offered in evidence the judgment roll in the case of Sweetman against Ramsey, to which reference has been made, for the purpose of showing that the legal status of the sheep was then undetermined. So far as the record discloses, Sweetman against Ramsey was an action in no wise involving or concerning any party to the present suit. The record in that action was therefore not relevant as evidence for or against either the plaintiffs or the defendants in this. The proceedings in the action of Sweetman against Ramsey were, for aught that is shown, *res inter alios acta.* Of course competent evidence tending to show that Sweetman, after the sale to Mary Kent, had possession of the sheep, would be relevant.

3. The defendants complain of the admission in evidence of the report of the testimony given by the defendant Thomas Kent before the referee on proceedings supplemental to execution. This evidence, under the circumstances of the case, was both relevant and competent upon at least two grounds: (1) As declarations of a party to the action; and (2) as statements touching ownership made by the seller of chattels while remaining in possession after the sale—there being testimony having a tendency to show that he was still in possession at the time the declarations were made.

4. The defendants, after showing the loss of the original, offered in evidence a copy of the bill of sale made by Thomas Kent to Mary Kent, the copy being a transcript in the office of the county recorder. It was error to exclude this item of evidence, for it had some relevancy. It must be remembered that the sale was attacked for actual fraud; while the bill of sale might not have been competent as proof of the truth of the recitals therein (upon which question we express no opinion), still the paper was part of the *res gestae*, and should have been admitted for the purpose of shedding light upon the issue of whether the transfer was made with the intent that the sheep should be held in trust for the seller. Ordinarily the omission to execute some written evidence of the sale of several thousand sheep might properly be regarded as an unusual, and perhaps suspicious, circumstance. But neither the bill of

sale, nor the so-called list of separate property of Mrs. Kent, was admissible by virtue of any provision contained in section 1432 of the Fifth Division of the Compiled Statutes of 1887. Section 1439 of the same division (being part of an act approved March, 3, 1887) by implication repealed that part of Sec. 1432, *supra,* requiring a list to be recorded in the office of the register of deeds. (*Kelly* v. *Jeffries,* 13 Mont. 170, 32 Pac. 753; *Lambrecht* v. *Patten,* 15 Mont. 260, 38 Pac. 1063.)

5. While testifying in his own behalf, the defendant Thomas Kent was asked the following question: "Did you transfer these sheep with the intention of defrauding any creditor?" The answer to this question was: "I did not." On motion of the plaintiffs, the question was stricken out, as a conclusion of the witness. A like question was put to Mary Kent, and objected to as incompetent because a conclusion, which objection the court sustained. These questions were proper, for whenever, in an action like the case at bar, the actual or personal intent becomes a material inquiry, the seller or the purchaser may testify that he did or did not have a fraudulent intent. The cases announcing this doctrine are many; indeed, the admissibility of such evidence is almost universally conceded.

6. The defendant Thomas Kent testified that at the time the sale was made he was not indebted to the plaintiffs. The defendants insist that the court excluded this evidence; but it is impossible to determine from the transcript whether or not the contention of the defendants is well founded. If the court struck out the evidence or disregarded it, as irrelevant, error was committed, for the defendants had the right to show that at the time of the sale Thomas Kent was neither indebted, nor anticipated becoming indebted or otherwise liable, to the plaintiffs. We observe, in passing, that it does not appear that there was a debt or liability on the 3d day of January, 1893, when the sale was made, or at any time before the 17th day of February, 1894, when the judgment was rendered. The rejection of Kent's statement that he did not owe the amount of the judgment was proper, for the reason that in the absence

of evidence tending to show fraud, accident, mistake or satisfaction, the judgment was conclusive evidence of his liability.

7.   To a witness for the defendants was put the following question upon direct examination: "What is the general reputation throughout that neighborhood as to her [Mary Kent] being the owner of sheep and property running on the Crow Indian reservation and other places?" The question was ruled out as incompetent. In this there was no error. The question was too general; it was not confined to the sheep in controversy.   Furthermore, the question seems to have been propounded for the purpose of eliciting hearsay testimony, which, if received, would have been immaterial.   We are unable to perceive in what way evidence showing that Mary Kent was generally reputed to be the owner of sheep purchased by her could, have served to show good faith towards creditors.   The inquiry seems to have been into a collateral matter.   In *Griswold* v. *Boley*, 1 Mont. 545, which is cited by the defendants in support of their contention that evidence of such general reputation is competent and relevant, it appeared that the plaintiff had allowed her husband to control the property, to call it his own, and to exercise acts of ownership over it, with her consent, whereby the defendant supposed, and had a right to suppose, that the husband was the owner.   The court said that, for the purpose of rebutting the allegation and proof as to fraud and conspiracy by the plaintiff and her husband, it was competent for her to show that it was generally known in the neighborhood that the property belonged to her, and was competent, also, for the reason that it tended to show that the defendant had not been fraudulently deceived as to the ownership of the property. In so far as the views expressed on this subject in the Griswold case may be deemed pertinent to the facts in this action, we are of the opinion that the rule of evidence there laid down is incorrect, and must be disapproved.

8.   The assertion is repeatedly made in the brief of the defendants that the questions of fact should have been submitted to the jury, and determined by them, and not by the court.

The remedy sought in the case at bar is purely equitable, and therefore the court, sitting as a chancellor, must determine the issues for itself, and may direct a verdict, (if there be a jury,) even though the evidence be conflicting. (*Sanford* v. *Gates*, 21 Mont. 277, 53 Pac. 749; *Power* v. *Lenoir*, 22 Mont. 169, 56 Pac. 106.) Technically correct practice is not followed when, in such a case as the one at bar, the court directs a verdict; strictly proper practice requires the court to take the matter entirely from the jury and decide the cause itself; the same result is, however, substantially accomplished by the course pursued in this case. Section 23 of Article III of the constitution of Montana ordains that the right of trial by jury shall be secured to all and remain inviolate; but this means nothing more than that the right of trial by jury as it existed when the constitution was adopted shall remain inviolate and be secured to all. The section does not enlarge the right to jury trial, nor does it extend that right to suits which were within the exclusive jurisdiction of chancery at the time the constitution became the organic law of Montana. Such an action as the one at bar was then, and ever has been, cognizable upon the equity side, and upon the equity side only, of the court.

9. Subdivision 4 of section 42 of the First Division of the Compiled Statutes of 1887 provides that ''an action for relief on the ground of fraud or mistake (the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting fraud or mistake) shall be commenced within two years.'' The present action is one based upon an alleged fraud against creditors; its purpose is to annul a sale because of such fraud; the right of action did not accrue, that is to say, the cause of action did not arise, until, (at the least,) the plaintiffs had recovered judgment against Thomas Kent, for before that time they were, (in the absence of a lien acquired by attachment) mere general creditors. (*Brown* v. *Campbell*, 100 Cal. 635, 35 Pac. 433; *Weaver* v. *Haviland*, 142 N. Y. 534, 37 N. E. 641.) The judgment against Thomas Kent was rendered on the 17th day of

February, 1894, and this action was commenced during the following year. It is plain, therefore, that the remedy is not barred by statute.

We have now considered all the errors assigned which are worthy of attention, with the exception of the specification that the evidence is insufficient to justify the decision of the court. As the judgment must be reversed, and the cause remanded for a new trial, it is deemed proper to reserve any expression of opinion upon the specification last referred to.

The transcript is so disfigured with erasures, corrections, and interlineations, and is so deficient in punctuation marks and neatness, as to be in parts scarcely legible; it is occasionally unintelligible. Such a transcript should not have been filed. The brief of the defendants, although it specifies the errors relied upon, is not to be approved in respect of the manner of argument. Instead of setting out separately and distinctly the arguments applicable to the different points, the brief commingles all propositions relied upon for a reversal into one rambling discussion, out of which it has been impossible to extract the reasons urged in support of any one proposition without much labor, rendered necessary by the slovenly arrangement mentioned. Attention is called to these matters, so that more care may be observed and a greater degree of diligence exercised by those whose duty it shall be to prepare transcripts and briefs.

The order denying a new trial and the judgment are reversed, and the cause is remanded.

*Reversed and remanded.*